885 A.2d 465

FEDERAL INSURANCE COMPANY, PLAINTIFF–RESPONDENT,
v. CAMPBELL SOUP COMPANY, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 25, 2005—Decided November 9, 2005.

Before Judges COBURN, COLLESTER and S.L. REISNER.

*Nancer H. Ballard* (*Goodwin Procter*) of the Massachusetts bar, admitted pro hac vice, argued the cause for appellant (*Lowenstein Sandler, and Ms. Ballard,* attorneys; *Robert D. Chesler and Ms. Ballard,* of counsel; *Mr. Chesler, Ms. Ballard, Don M. Kennedy, Daniel P. Dain and James R. Sweet,* on the brief).

*Christopher T. Handman* (*Hogan & Hartson*) of the Washington, D.C. bar, admitted pro hac vice, argued the cause for respondent (*Belsole & Kurnos, and Mr. Handman,* attorneys; *Roy E. Kurnos and Mr. Handman,* of counsel; *Mr. Kurnos, Mr. Handman, David J. Hensler and Albert W. Turnbull,* on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

This dispute between Federal Insurance Company and Campbell Soup Company requires interpretation of an insurance policy. In essence, the policy requires payment of defense costs and indemnification for any claims arising out of Campbell's participation in the sale or purchase of securities. When a third party sued Campbell, Campbell asserted that the action arose out of such a securities transaction and demanded coverage from Federal. Federal filed this declaratory judgment action, alleging that the underlying transaction was not covered by its policy and that the complaint unambiguously alleged facts demonstrating that point. Campbell moved for partial summary judgment on the duty to defend, and Federal cross-moved for summary judgment as to defense and indemnification.

The underlying claim arose from an exchange of securities between Campbell, as parent corporation, and its wholly owned subsidiary, Vlasic Foods International, Inc. ("VFI"), whose shares, as part of the overall transaction, were distributed to Campbell's shareholders. The first issue is whether the transaction with VFI involved a "purchase" or "sale" of securities under the insurance policy. The second issue is whether the complaint alleged facts indicating a covered transaction. In a thorough and well-reasoned opinion, Judge Harriet Derman agreed with Federal in all respects. Campbell appealed. We affirm.

I

Our statement of facts is based on the lengthy complaint filed against Campbell, but is limited to its essential allegations. Campbell is a publicly traded corporation with billions of dollars in sales each year. In September 1997, it announced the spin-off plan at issue, and in November, it formed VFI, a wholly owned subsidiary, to carry out the plan. On March 26, 1998, Campbell and VFI signed agreements calling for the transfer of various Campbell subsidiaries to VFI in return for VFI's promise, agreed to by the banks, to be solely responsible for the repayment of a $500 million loan to be made to Campbell. The $500 million was supposed to represent VFI's fair share of Campbell's overall debt. These transactions were to be completed on March 30, the date set for the proportional distribution of VFI's shares through Campbell to its shareholders, but before the actual distribution. The transfers and the distribution of VFI's stock to Campbell's shareholders took place as scheduled, and until that time, Campbell completely dominated VFI as its wholly owned subsidiary.

We assume for present purposes that Campbell knowingly placed excessive debt and other obligations on VFI in relation to the assets transferred, which caused VFI to file for bankruptcy protection in January 2001. As part of the bankruptcy plan, VFB L.L.C. was formed as the successor to VFI; and in February 2002, on behalf of VFI's unsecured creditors, VFB filed the

underlying action against Campbell, asserting damages of $200 million under New Jersey statutes governing fraudulent transfers and conveyances, the United States Bankruptcy Code, and common law. The complaint did not allege any violation of federal or state securities laws.[1]

The relevant portion of the insurance policy Federal issued to Campbell offers defense and indemnification with respect to "any *Claim* which in whole or in part, is ... based upon, arising from or in consequence of a *Securities Transaction* ...;" and defines a "Securities Transaction" as "the purchase or sale of, or offer to purchase or sell, any securities issued by any *Insured Organization.*"

## II

■ Campbell contends that the allegations of VFB's complaint correspond with the plain language of the insurance policy because the complaint bases liability on the purchase and sale of securities, and the policy covers actions arising out of the purchase or sale of securities. Campbell further contends that those transactional terms should be given their plain and ordinary meaning, as defined by dictionaries, New Jersey case law, and the New Jersey Uniform Securities Law. Federal also argues that the complaint and policy are unambiguous, but it says that since the complaint alleges transactions between Campbell and a wholly owned entity, there are no allegations of sales or purchases of securities out of which the underlying case could arise. It also argues that the policy clearly does not extend coverage when considered in context, namely the purchase of insurance against security claims or claims arising out of security transactions.

Campbell cites these definitions from *Webster's Third International Dictionary* (1986): "purchase [means] to obtain ... by

---

[1] On September 13, 2005, in an unreported opinion supplied to us by Campbell, the United States District Court for the District of Delaware held that Campbell was not liable to VFB.

paying money or its equivalent; buy for a price ...," *id.* at 1845; "sale [means] the act of selling; a contract transferring the absolute or general ownership of property from one person or corporate body to another for a price (as a sum of money or any other consideration)." *Id.* at 2003. It also cites a number of New Jersey cases, all defining a sale as the transfer of property from one person to another for consideration. *See, e.g., Madison Indus., Inc. v. Eastman Kodak Co.,* 243 *N.J.Super.* 578, 586, 581 *A.*2d 85 (App.Div.1990). And finally, it cites the Uniform Securities Law definition of "sale or sell" as including "every contract o[r] sale of, contract to sell, or disposition of, a security or interest in a security ... for value." *N.J.S.A.* 49:3–49(j)(1).

Based on those definitions, Campbell concludes that since the complaint alleges that it sold, and VFI purchased, the stock and assets of some of Campbell's business entities, there was an allegation of "a purchase and sale of securities within the plain and ordinary meaning of the [insurance] policy."

When a complaint states a claim of a risk insured against, the duty to defend arises. *Voorhees v. Preferred Mut. Ins. Co.,* 128 *N.J.* 165, 173, 607 *A.*2d 1255 (1992). "Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit." *Ibid.* Ambiguous allegations should be resolved in favor of coverage for defense. *Ibid.*

When the express language of an insurance policy is clear and unambiguous, it must be enforced as written. *Royal Ins. Co. v. Rutgers Cas. Ins. Co.,* 271 *N.J.Super.* 409, 416, 638 *A.*2d 924 (App.Div.1994). But an "insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Powell v. Alemaz, Inc.,* 335 *N.J.Super.* 33, 44, 760 *A.*2d 1141 (App.Div.2000). A genuine ambiguity arises only when "the phrasing of the policy is so confusing that the average policy holder cannot make out the boundaries of coverage." *Weedo v. Stone–E–Brick, Inc.,* 81 *N.J.* 233, 247, 405 *A.*2d 788 (1979).

Although the words of the policy should be given their ordinary meaning, *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 537, 582 *A.*2d 1257 (1990), they must be construed in the "factual context" to which they apply. *Voorhees, supra,* 128 *N.J.* at 176, 607 *A.*2d 1255.

We consider first whether the insurance policy provided coverage for the underlying transaction, mindful that the context is not merely the purchase and sale of goods but the regulation of securities. Although New Jersey has legislated in this area by adoption of the Uniform Securities Law, *N.J.S.A.* 49:3–47 to –76, federal law dominates. The federal statutory definitions of the purchase and sale of securities are no different than our definitions. The Securities and Exchange Act of 1934 defines "purchase" to mean "any contract to buy, purchase, or otherwise acquire." 15 *U.S.C.A.* § 78c(a)(13). And it defines "sale" as "any contract to sell or otherwise dispose of." 15 *U.S.C.A.* § 78c(a)(14).

The Legislature has directed that our securities act "shall be so construed as to ... co-ordinate ... the interpretation and administration of this act with related federal regulations." *N.J.S.A.* 49:3–75. Therefore, when construing our act, we look for guidance to federal decisions interpreting federal securities law. *State v. Russell,* 119 *N.J.Super.* 344, 347, 291 *A.*2d 583 (App.Div. 1972).

In *Rathborne v. Rathborne,* 683 *F.*2d 914, 918 (5th Cir.1982), the court held that "a transfer of securities from a wholly controlled subsidiary to its parent or between two corporations wholly controlled by a third does *not* amount to a statutory purchase or sale." (citing *Int'l Controls Corp. v. Vesco,* 490 *F.*2d 1334, 1343 (2d Cir.1974); *In re Penn Central Sec. Litig.,* 347 *F.Supp.* 1324, 1326–27 (E.D.Pa.1972), *aff'd,* 494 *F.*2d 528, 532–39 (3d Cir.1974)).

Campbell argues that *Vesco, supra,* supports its position because the court held that a dividend in kind to shareholders was a "sale" under federal securities law. 490 *F.*2d at 1345–46. But Campbell also concedes that the crucial transaction here was not

the distribution of the VFI shares through Campbell to the Campbell shareholders, but the transfers between Campbell and VFI, its wholly owned subsidiary. And as to a transaction of that sort, the court held that a parent corporation's transfer of stock to its wholly owned subsidiary did not "dispose of" the stock because the parent retained control, and nothing was relinquished. *Id.* at 1343.

Another case on which Campbell relies is *Goldberg v. Meridor*, 567 *F.*2d 209 (2d Cir.1977), *cert. denied*, 434 *U.S.* 1069, 98 *S.Ct.* 1249, 55 *L.Ed.*2d 771 (1978). This was a derivative action brought by a corporate subsidiary that issued shares of its stock to its controlling parent in return for all of the parent's assets and liabilities. The court was satisfied that this transaction came within the federal securities law, but only because the subsidiary was not wholly owned by the parent. *Id.* at 218. The court held that "when a controlling corporation causes a *partly owned* subsidiary to sell its securities to the parent in a fraudulent transaction and fails to make a disclosure or ... makes a misleading disclosure," the securities act applies. *Ibid.* (emphasis added).

Our interpretation of the insurance policy is consistent with the federal courts' interpretation of the federal securities act and is further informed by the overarching purpose of the securities laws, which is to protect the "investing public." *Russell, supra,* 119 *N.J.Super.* at 351, 291 *A.*2d 583; *Mayflower Sec. v. Bureau of Sec.,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973) (asserting that the area of securities transactions "is a sensitive one, open to great abuses and therefore subject to careful governmental regulation to assure that those who engage in the business meet high standard in the interest of protection of the public"). The purpose of the securities laws is not to protect Campbell from itself, and no reasonable corporation in Campbell's position could have thought otherwise and believed that it had purchased this insurance for protection while engaging in an intra-corporate exchange, a movement of assets from one corporate pocket to the other.

The lack of merit in Campbell's position may also be illustrated by considering these transactions from the point of view of Campbell's shareholders. Their corporation, Campbell, had too much debt and too many insufficiently profitable subsidiaries. That combination was adversely affecting the value of their Campbell stock. The spin-off relieved Campbell of both problems, thereby increasing the value of their Campbell stock. And the amount of the relief was enhanced by having VFI take on a disproportionate share of the Campbell debt. Since the Campbell shareholders received their shares in the new entity for nothing, if the VFI action against Campbell were successful, and if Campbell's construction of the insurance policy were correct, VFI's debt would be reduced by $200 million, representing the excessive debt it had taken on. And the result of the scheme would be that the $200 million dollar payment would come from Campbell's insurance carrier, thereby substantially increasing the value of their VFI shares without harm to their shares in Campbell, while presumably making VFI a profitable entity. In short, by this intracorporate transaction the Campbell shareholders would be able to transform the debt of their companies into an insurance claim.

The only way this insurance policy can possibly be read to support Campbell's position is to read it out of the context of securities law, and, as noted, we are obliged to reject that approach. *Voorhees, supra,* 128 *N.J.* at 176, 607 *A.*2d 1255. Nor for that matter could Campbell have reasonably believed that the dictionary definitions and the New Jersey case law definitions of purchase and sale somehow suggested coverage here. Like the securities law, those definitions expressly require or imply a transaction with another entity or person, not with oneself. When Campbell dealt with VFI, it was dealing with itself, however the transaction was structured.

Having determined that the insurance policy is not ambiguous, we must still consider, with respect to Campbell's claim that Federal should have been required to provide a defense to the underlying complaint, whether the complaint asserted a claim

arising out of a securities transaction. The answer is obviously no because the complaint clearly alleges that the securities were transferred between a corporation and its wholly owned subsidiary, and that is not an allegation of a sale or purchase of securities. We need not consider the balance of the arguments offered by Campbell because they are dependent on a determination that the policy is ambiguous, and, as we have concluded, it is not. Therefore, the summary judgment orders are affirmed.