**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3151-15T4

PETER FONTANA AND KATHY
FONTANA,

    Plaintiffs-Respondents,

v.

EXECUTIVE CARS, NEW YORK BLACK
CAR.COM, ROYAL DISPATCH SERVICES,
INC., KING LEE CHEUNG and TWIN LIGHTS
INSURANCE COMPANY,

    Defendants,

and

GLOBAL LIBERTY INSURANCE COMPANY
OF NEW YORK,

    Defendant-Appellant.

_____

Argued September 11, 2017 — Decided November 8, 2017

Before Judges Messano, Accurso and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1359-11.

Vincent F. Gerbino argued the cause for appellant (Bruno, Gerbino & Soriano, LLP, attorneys; Michael R. Tucker, Jr., on the briefs).

Robert A. Jones argued the cause for respondents.

PER CURIAM

In this insurance coverage dispute, defendant Global Liberty Insurance Company of New York appeals from orders declaring that defendant King Lee Cheung and his automobile had coverage under an automobile liability insurance policy Global issued to defendant Royal Dispatch Services, Inc.[1] Based on our review of the record, we affirm the court's order finding Cheung's vehicle was a covered auto under the policy. Because we conclude the clear and unambiguous terms of the policy do not support a finding that Cheung was an insured, we reverse the court's order requiring that Global defend and indemnify Cheung, and remand for further proceedings.

I.

Royal operates in the transportation industry as a franchisor that provides dispatching services to its franchisees. Pursuant to its franchise agreements, Royal dispatches the franchisees in their own vehicles to provide limousine services to Royal's customers. Cheung was a franchisee of Royal.

---

[1] Royal is also referred to as Executive Cars, New York Black Car.com, Last Radio Group Corp. and Velocity Limo Inc. We refer to the entities collectively as Royal.

In 2010, Royal dispatched Cheung to transport plaintiff Peter Fontana, an employee of one of Royal's customers, from New York City to a location in New Jersey. During the trip, the vehicle was involved in a single-vehicle accident in which Fontana suffered significant injuries.

Fontana and his wife filed a complaint against Cheung and Royal alleging that Cheung, individually and in his capacity "as the agent, servant, employee of" Royal, negligently caused the accident and Fontana's injuries. An amended complaint also sought a declaratory judgment that plaintiffs were third-party beneficiaries of the Global insurance policy and entitled to coverage because Cheung's vehicle was listed as a "covered auto[]" under the policy."

The court conducted a bench trial on plaintiffs' request for a declaratory judgment that Cheung and his vehicle had liability coverage under the Global insurance policy. The evidence showed that at the time of the accident, Cheung had a franchise agreement with Royal pursuant to which Royal dispatched Cheung to provide limousine services to Royal's customers. The agreement states that Cheung is "an independent businessman, and shall not be deemed to be an employee or agent of" Royal. In accordance with the

agreement's requirements, Cheung maintained an automobile liability insurance policy with a bodily injury limit of $100,000.[2]

Royal separately maintained the Global automobile liability insurance policy at issue here. The policy provides coverage for Royal's use or operation of "non-owned automobiles," with a coverage limit of $1,000,000 and a $100,000 self-insured retention. The declarations section of the policy is entitled, "Business Auto Declarations," and states in large, bold print that the policy is for "NON-OWNED AUTO ONLY," and describes the policy's coverage through references to other portions of the policy entitled "items." Item One states that the policy is issued to Royal and lists Royal as the named insured.

Item Two includes a schedule of coverages and covered automobiles, and states that the policy provides automobile liability coverage for "symbols [7/9] from the [c]overed [a]utos [s]ection of the Business Auto Coverage Form." The Business Auto Coverage Form provides definitions for the "symbols 7 and 9." All of the 234 automobiles owned by Royal's franchisees and used in their provision of transportation to Royal's customers fall within the definitions of covered autos under Business Auto Coverage Form

---

[2] Following the accident, Cheung's insurance company paid plaintiffs its $100,000 bodily injury coverage limit.

symbols 7 and 9.  The policy, however, does not list, mention or identify any of the franchisees.

"Symbol 7" includes automobiles, otherwise referred to as "specifically described 'autos,'" which are "those 'autos' described in Item Three of the [d]eclarations for which, a premium charge is shown."  Item Three lists all of the vehicles used by Royal's 234 franchisees and the premium charged by Global for each vehicle.  Cheung's vehicle is listed as a covered automobile.[3]

The Business Auto Coverage Form also defines "symbol 9" automobiles, otherwise referred to as "[n]on[-]owned 'autos,'" as "those 'autos' you [Royal,][4] do not own, lease, hire, rent or borrow that are used in connection with your business."  The policy includes an "endorsement [which] modifies [the] insurance provided under" symbol 9, and provides that coverage for damages that would otherwise be payable will be reduced by a $100,000 self-insured retention.

During trial, the court heard testimony concerning Royal's operations, its purchase of the policy and the policy's terms. Royal's president Turgot Ozen testified that Royal has twenty-seven employees, but they do not drive vehicles to perform their

---

[3] Cheung's vehicle is listed as vehicle "#109."

[4] The policy defines "the words 'you' and 'your'" as the "Named Insured," i.e., Royal.

job duties or provide transportation for Royal's customers. The employees perform only dispatch and other administrative services. Royal's employees do not maintain or drive the vehicles used by Royal's franchisees.

Ozen completed the policy application and was required to provide Global with "driver information" for all of Royal's 234 franchisees. Ozen was not required to provide any information about Royal's twenty-seven employees, and the employees' vehicles are not listed in the policy. The annual premium for the policy was in excess of $94,000.

According to Ozen, Royal purchased the Global policy for non-owned vehicles to insure the company if "one of [its] employees . . . got into an accident" while driving a non-owned vehicle while performing Royal's business. He also testified, however, that Royal's employees do not drive any of the non-owned vehicles covered autos listed in the policy.

When asked if he purchased the policy to provide excess coverage if one of the dispatched franchisees was involved in an accident, Ozen responded, "I don't think that was the intent. I'm not sure." On cross-examination, however, Ozen acknowledged that at his deposition he testified that he understood the policy provided coverage "over and above the coverage that [a franchisee] would have if he [or she] was involved in an accident," and that

the policy covered the franchisee's vehicles if there was an accident and the franchisee was found liable.

Ozen acknowledged the policy included a $100,000 self-insured retention, which was identical to the amount of insurance each franchisee was required to maintain. Royal did not have any insurance coverage for the self-insured retention.

Ozen also testified that upon request, Royal provided a "certificate of insurance" to its customers showing Royal had a $1,000,000 automobile liability policy. Royal provided a certificate of insurance to Fontana's employer, which had contracted with Royal for transportation services.

Robert King, Global's senior vice president, testified concerning the underwriting process for the policy. He considered the driving credentials, records and primary insurance coverage of the franchisees in assessing the policy's insurance coverage risk. Through that process, Global arrived at the insurance premium it charged for each of the designated covered vehicles listed in the policy. King acknowledged that Global did not review the credentials, driver history or insurance of any of Royal's twenty-seven employees.

King explained that Royal is the only named insured under the policy. He testified the policy does not insure Cheung for his own negligence, but instead insures Royal for its active

negligence. King testified that, for example, the policy provided coverage if Royal dispatched an intoxicated driver that was involved in an accident.

Plaintiffs presented Edward Ragan as an expert in commercial liability insurance underwriting. Ragan described the policy as "a non-owned automobile policy that appears to have been . . . scheduling individual automobiles with individual premium charges for each vehicle under . . . standard [insurance services office (ISO)] commercial automobile forms." He found it "rather unorthodox" that the policy listed individual vehicles "on the dec[larations] page," which suggested "that the policy is limiting the scope of its coverage to those designated vehicles for which a specific premium charge is" made.

Ragan explained the "standard ISO" coverage for symbols 7 and 9 as those terms were defined in the Business Auto Coverage Form of the policy, stating that symbol 7 "seems to be somewhat redundant because [symbol] 7 is only for specific described autos . . . referencing the non-owned vehicles" and the vehicles are also listed in Item Three of the declarations section. He testified that based on his experience with standard ISO forms, the "symbol 9" coverage is "consistently worded," in a manner intended to cover vehicles that are used for business purposes.

Ragan also addressed the $100,000 self-insured retention, which was set forth in what he described as "a manuscripted endorsement." He testified that the self-insured retention "seem[s] to interface with" the requirement that the franchisees maintain their own insurance policies with liability limits of $100,000.[5]

Ragan testified that based on his experience, a non-owned automobile coverage insurance policy "follows the car," meaning "if there is a loss while that vehicle is in operation and it's covered under the commercial auto policy, the policy covers that auto." He opined that the policy offered "clear coverage" for Cheung's vehicle because "[i]t was being used pursuant to Royal['s] business." He also testified that the premium charged for the policy was consistent with the provision of $1,000,000 in excess coverage for the listed vehicles because each of the vehicles had primary insurance of at least $100,000.

During trial, Cheung briefly testified about the franchise agreement and the details of his insurance policy. He also stated that he understood Royal provided additional insurance coverage in excess of his personal insurance policy.

---

[5] By its express terms, the endorsement providing the $100,000 self-insured retention applies only to covered autos under symbol 9.

The court issued a written opinion and found the policy described in detail the "non-owned automobiles providing services to [Royal's] customers." The court stated that "[i]t is clear that Royal is the insured," but relied on what it determined were the reasonable expectations of the parties and concluded "there is coverage for the accident by virtue of the business auto declarations which include . . . Cheung and his vehicle." The court did not find that Cheung was an insured under the policy, and did not otherwise explain or identify the policy provision pursuant to which it concluded Cheung had coverage. Instead, the court relied solely upon what it found were the reasonable expectations of the parties for its determination there was coverage for "Cheung and his vehicle."

The court granted a declaratory judgment that the policy's coverage "extends to Cheung's vehicle." The court entered an order stating that the "$1,000,000[] . . . bodily injury liability coverage set forth in [the policy] extends to and covered [Cheung's] vehicle . . . in excess of [Cheung's] $100,000[] . . . liability limit," and that the coverage "shall be available . . . in the event the [j]ury awards damages to [plaintiff] in excess of $100,000[]." (emphasis added).

Global's counsel sought clarification as to whether the trial court's order was limited to a finding the policy provided only

coverage for Cheung's vehicle or if the court also found the policy provided coverage for Cheung's negligence. In response, the court held a conference and explained that the insurance policy named "every vehicle, the make and model of the vehicle's identification number with an individual premium," and that those vehicles "can be matched to the drivers whose licenses and other information were attached to the application for coverage and used for underwriting purposes."

The court found the policy provided coverage "to the vehicle and the drivers," regardless of whether Cheung's status with Royal was as "an employee or an independent contractor." Thus, the court determined that the policy provided coverage to Cheung for his own negligence, even if Royal was without any fault and Cheung's negligence could be not otherwise be attributed to Royal. In essence, the court found that Cheung was an insured under the policy and thereby covered by its terms. The court entered an order stating the insurance extends to Cheung's vehicle in excess of Cheung's $100,000 liability limit and "covers and requires Global to defend and indemnify" Cheung for his negligence regardless of his status with Royal.

The parties subsequently reached a settlement agreement which stipulated that plaintiff suffered damages in the amount of $750,000, and provided that $100,000 would be paid from Cheung's

policy. The balance is to be paid by Global subject to the outcome of this appeal. The court entered a final order memorializing the parties' settlement. This appeal followed.

## II.

Our review of a trial court's findings following a bench trial is limited. We owe "deference to those findings of the trial judge which are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Thus, an appellate court will "not disturb the factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting In re Trust Created by Agreement Dated December 20, 1961, ex rel. Johnson, 194 N.J. 276, 284 (2008)).

However, "[t]he interpretation of an insurance contract is a question of law for the [appellate] court to determine . . . ." Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996) (citing Weedo v. Stone-E-Brick, Inc., 155 N.J. Super. 474,

479 (App. Div. 1977), rev'd on other grounds, 81 N.J. 233 (1979)).

The trial court's resolution of such purely legal questions is entitled to no deference. Arthur Anderson, LLP v. Fed. Ins. Co., 416 N.J. Super 334, 345 (App. Div. 2010).

Although Global appeals both of the court's orders, it does not argue that the court erred in first finding that Cheung's vehicle was a covered automobile under the policy.[6] Instead, Global argues only that the court erred by finding the policy covers Cheung for his own negligence. Global argues that the plain and unambiguous language of the policy provides coverage only for Royal's negligence and that the court therefore erred by relying on the expectations of the parties to interpret the policy's clear terms. We agree.

The interpretation of an insurance contract requires that we first examine the plain language of the policy. Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196, 207 (2017). "[I]f the terms are clear, they 'are to be given

---

[6] In its reply brief, Global states that it "does not dispute that . . . Cheung's vehicle is a 'covered auto'" under the policy. Our independent review of the policy and the record confirms that the 234 vehicles are covered autos under symbol 7 because they are listed in Item Three. We offer no opinion as to whether Cheung's vehicle was a covered auto under symbol 9. The trial court did not make that finding and resolution of the issue requires factual determinations as to whether Cheung's vehicle was "lease[d], hire[d], rent[ed] or borrow[ed]" by Royal when the accident occurred, and whether Cheung was Royal's "employee[]" at the time.

their plain, ordinary meaning,'" Pizzulo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008) (citations omitted), and "that is the end of the inquiry," Oxford Realty Grp. Cedar, supra, 229 N.J. at 207 (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)). "If the plain language of the policy is unambiguous, we will 'not "engage in a strained construction to support the imposition of liability" or write a better policy for the insured than the one purchased.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Chubb Custom Ins. Co., supra, 195 N.J. at 238); accord Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595 (2001).

Applying these principles, we begin our interpretation of the Global policy, as we must, with the policy's language. Cheung is not a named insured under the policy. To the contrary, the policy's declarations section expressly states that Royal is the named insured. The declarations section also refers to covered autos and includes the list of vehicles to which the coverage under the policy applies. It is devoid of any language suggesting Royal's franchisees are insureds,[7] and it makes no mention of Cheung.

---

[7] The court's finding there was "coverage by virtue of the business auto declarations which include . . . Cheung and his vehicle" is contradicted by the policy's unambiguous language. The

Section II of the Business Auto Coverage Form defines the policy's automobile liability coverage. There is nothing unclear about its terms. In pertinent part, it states that the policy provides coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property' damage to which [the] insurance applies, caused by an 'accident' and resulting from the . . . use of a covered 'auto.'" There is no ambiguity in this provision, which grants coverage only to "insureds."

The policy clearly and unequivocally defines the term "insured." In the first instance, an insured is defined as "[y]ou for any covered 'auto.'" The term "you" refers solely to Royal. Thus, Royal has automobile liability coverage as the insured for sums it legally must pay for bodily injuries and property damage caused by an accident resulting from the use of a covered auto. Notably, Cheung is not an "insured" under the first definition, and plaintiffs do not contend otherwise.

The policy includes a second definition of an insured, but Cheung does not meet the standard. The policy defines an insured as:

---

declarations section of the policy makes clear automobile liability insurance is provided for covered autos. Contrary to the court's finding, the declarations section does not "include," mention or list Cheung or any of the other franchisees.

b. Anyone else while using with [Royals'] permission a covered 'auto' [Royal] own[s], hire[s] or borrow[s] except:

(1) The owner or anyone else from whom you hire or borrow a covered 'auto[.]' . . .

(2) Your 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household.

(3) Someone using a covered 'auto' while he or she is working in a business of selling, servicing, repairing, parking or storing 'autos' unless that business is yours.

. . . .

[(emphasis added).]

Under this definition, "anyone" using a covered auto with Royal's permission that Royal owns, hires or borrows is an insured.[8] But there is an unambiguous exception: when the "owner" of a covered auto uses the vehicle, the owner is not an insured under the policy and is thereby expressly excluded from coverage. Cheung falls directly within this plainly worded exception to the second definition of insured because he owned the covered auto he

---

[8] We need not address the other requirement necessary to qualify as an insured under this provision; that the covered auto is "own[ed], hire[d] or borrow[ed]" by Royal. We observe only that if those requirements are not satisfied, "[a]nyone else while using with [Royal's] permission a covered 'auto'" is not an insured.

used to transport Fontana when the accident occurred. Again, plaintiffs do not argue otherwise.

Based on our review of the policy's plain language, we are satisfied Cheung was not an insured entitled to automobile liability coverage. As the owner of the vehicle he was driving when the accident occurred, he was expressly excluded from the policy's definition of insured and therefore not entitled to coverage.

We are mindful that insurance policies have been recognized as "contracts of adhesion and, as such, are subject to special rules of interpretation." Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 272 (2001). We will construe policies "liberally in [the insured's] favor to the end that coverage is afforded 'to the full extent that any fair interpretation will allow.'" Id. at 273 (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)). However, having found the clear language of the policy excludes Cheung as an insured, our inquiry concerning coverage ends and we cannot rewrite the policy's terms or find coverage where the policy plainly provides none. See Oxford Realty Grp. Cedar, supra, 229 N.J. at 207; Progressive Cas. Ins. Co., supra, 166 N.J. at 273.

The trial court did not address the policy's plain language. Instead, the court relied upon the reasonable expectations of the

parties as the basis for its determination Cheung was entitled to coverage regardless of his status as "an employee or an independent contractor." A court may rely on the reasonable expectations of the parties to construe a contract of insurance in two circumstances: "to reflect the reasonable expectations of the insured in the face of ambiguous language and phrasing, and in exceptional circumstances, when the literal meaning of the policy is plain.'" Abboud v. Nat'l Union Fire Ins. Co., 450 N.J. Super. 400, 408 (App. Div. 2017) (quoting Doto v. Russo, 140 N.J. 544, 556 (1995)). Here, the court erred by relying on the reasonable expectations of the parties because neither of the two circumstances were present.

First, as noted, the policy was not ambiguous. "[T]he test for determining if an ambiguity exists is whether 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Nunn v. Franklin Mut. Ins. Co., 274 N.J. Super. 543, 548 (App. Div. 1994) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)); accord Templo Fuente De Vida Corp., supra, 224 N.J. at 200. "An 'insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants.'" Oxford Realty Grp. Cedar, supra, 229 N.J. at 207 (quoting Fed. Ins. Co. v. Campbell Soup Co., 381 N.J. Super. 190, 195 (App. Div. 2005), certif. denied,

186 <u>N.J.</u> 365 (2006)). Nor does the separate presentation of an insurance policy's declarations sheet, definition section, and exclusion section necessarily give rise to an ambiguity. <u>Id.</u> at 207-08. Here, the plain language of the policy makes clear that Cheung was not an insured, and the trial court did not find any ambiguity concerning Cheung's status as an insured under the policy. Thus, there was no ambiguity in the policy permitting the court's reliance on the reasonable expectations of the parties to provide Cheung with coverage under the policy. <u>See</u> <u>Abboud</u>, <u>supra</u>, 450 <u>N.J. Super.</u> at 408.

Second, there is no evidence supporting a finding of exceptional circumstances permitting coverage in contravention of the policy's plain language, <u>see</u> <u>id.</u> at 408-09, and the court made no findings of exceptional circumstances permitting its reliance upon the reasonable expectations of the parties. "[E]xceptional circumstances are narrowly confined" and apply "to policy forms that have characteristics of an adhesion contract." <u>Id.</u> at 409. A court "may vindicate the insured's reasonable expectations over the policy's literal meaning 'if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.'" <u>Ibid.</u> (quoting <u>Zacarias v. Allstate Ins. Co.</u>, 168 <u>N.J.</u> 590, 601 (2001)).

The "expectations of coverage must be real and "objectively reasonable." Id. at 410. In the assessment of the expectations, "a court will consider communications regarding the coverage between the insured or its broker and the insurer or its agent that relate to the insured's expectations," ibid., "whether the scope of coverage is so narrow that it 'would largely nullify the insurance' and defeat the purpose for which it was obtained," ibid. (internal citation omitted), and "whether policies with 'unrealistically narrow coverage' cause 'broad injury to the public at large[,]' which may preclude enforcement on public policy grounds," ibid. (quoting Sparks v. St. Paul Ins. Co., 100 N.J. 325, 340-41 (1985)).

Again, the policy here defines insured in a simplistic and straight-forward manner, clearly excludes from the definition of insured the owners of vehicles leased, hired, rented or borrowed by Royal, and does not include any language suggesting Cheung was an insured. There is no evidence showing communications supporting a reasonable expectation that Cheung was covered under the policy. The court's finding that Royal had a reasonable expectation of coverage was based on Ozen's deposition testimony about his subjective belief the policy would cover Cheung's negligence. His opinion concerning coverage is untethered to any communication

with Global, policy language or other evidence supporting an objectively reasonable expectation that Cheung was an insured.

The court also relied on Ragan's testimony that the $100,000 self-retention endorsement was a "manuscript endorsement" that addressed Royal's "special needs" to support its finding Royal reasonably expected Cheung would be covered under the policy. However, the endorsement does not expand the definition of insured or the coverage provided under the policy. The endorsement simply provides a self-insured retention for covered autos under symbol 9. There is nothing in the endorsement or Ragan's testimony about it that supports an objectively reasonable expectation that Cheung was an insured under the policy.

The court also concluded Royal had a reasonable expectation that Cheung was covered based on its finding that the only reasonable interpretation of the policy was that it provided contingent coverage "on driver owned vehicles" and Royal would not have spent in excess of $94,000 unless coverage under the policy extended to Cheung's vehicle. It therefore appears the court applied the principle permitting reliance on the reasonable expectations of the insured where the plain language would nullify coverage or result in unrealistically narrow coverage that would cause broad injury to the public. See Abboud, supra, 450 N.J. Super. at 410.

We disagree with the court's application of the principle because the court interpreted the policy too narrowly. Coverage under the policy is not limited to Royal's liability for its employees' negligence while driving covered autos or to Royal's negligence in dispatching a franchisee. Although there was testimony the policy provides that coverage, the court erred in viewing the policy's coverage as being limited to those circumstances.

"Nonownership motor vehicle coverage insures an employer . . . against liability imputed to [it] by reason of the negligence of employees and other persons using vehicles not owned by the insured on the business of the insured. It affords protection against liability incurred under principles of respondeat superior." Ins. Co. of N. Am. v. Gov't Employees Ins. Co., 162 N.J. Super. 528, 535 (App. Div. 1978). That is the coverage Royal obtained here. The policy provides coverage if Royal is found vicariously liable for the negligence of anyone driving any of the 234 covered autos listed in the policy in furtherance of Royal's business. As such, the plain language of the policy does not nullify the coverage or result in narrow coverage inconsistent with the protection of the public. See Abboud, supra, 450 N.J. Super. at 410. To the contrary, the policy provides Royal, which dispatches 234 franchisee vehicles

to provide services to its customers, with $1,000,000 in coverage if Royal, as the insured, is held vicariously liable for damages caused by a driver of a covered automobile.

Because a plain reading of the policy does not result in a nullification of the insurance coverage or so narrowly limits coverage to cause broad injury to the public, see Abboud, supra, 450 N.J. Super. at 410, the court erred in ignoring the policy's plain language in favor of what it determined were the reasonable expectations of the parties, id. at 410-11. Under the policy's clear language, Cheung was not an insured and it was error to conclude he had coverage "regardless of whether his status, at the time he operated the operated the covered vehicle . . . was an employee of, or independent contractor of," Royal.

Our determination that Cheung was not an insured under the policy does not end the inquiry. The policy may provide coverage for Cheung's negligence, but not because he is an insured. The policy provides coverage if it is determined that Royal, as the insured, is vicariously liable for Cheung's putative negligence that resulted in plaintiffs' alleged injuries.

Issues concerning the status of an individual as an employee, independent contractor or agent, and vicarious liability are factually and legally complex. See, e.g., Estate of Kotsovska v. Liebman, 221 N.J. 568, 592-95 (2015) (explaining standards used

23                                                                      A-3151-15T4

to distinguish employees and independent contractors); <u>Baboghlian v. Swift Elec. Supply Co.</u>, 197 <u>N.J.</u> 509, 518 (2009) (explaining principal's vicarious liability for actions of employees and independent contractors). The complaint alleged Cheung was acting as Royal's agent, servant or employee when the accident occurred. It is unclear why Cheung's status, and Royal's potential vicarious liability for Cheung's alleged negligence, was not litigated before the trial court.[9] The trial instead focused solely on the parties' interpretations of the policy language. As noted, however, under the unambiguous language of the policy, there is coverage only if Royal is vicariously liable for Cheung's alleged negligence.

In any event, we affirm the court's order finding Cheung's vehicle was a covered auto under the policy, reverse the court's order finding Cheung was covered under the policy regardless of his status as an employee or independent contractor, and remand for further proceedings to determine if there is coverage under the policy because Royal is vicariously liable for Cheung's putative negligence.

---

[9] During the litigation, the court denied cross-motions for summary judgment on the issue of Cheung's status as an independent contractor or agent of Royal. The court found there were genuine issues of material fact requiring resolution by a jury.

A-3151-15T4

We offer no opinion as to whether Royal is vicariously liable for Cheung's negligence. There is an insufficient evidentiary record upon which that determination can be made. That issue must, however, be resolved in the first instance because under the clear language of the policy Cheung is not an insured. If it is determined Royal is not vicariously liable for Cheung's negligence, plaintiff may renew its application for a determination that there are exceptional circumstances permitting the reasonable expectations of the parties to overcome the policy's clear language. See Abboud, supra, 450 N.J. Super. at 410.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION