**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1179-17T1

FOUZIA SALIH,

     Plaintiff-Appellant,

v.

OHIO SECURITY INSURANCE
COMPANY,

     Defendant-Respondent.

_____

Submitted October 22, 2018 – Decided December 3, 2018

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3038-16.

Gallant, Bergstralh & Hadgis, PC, attorneys for appellant (David S. Bergstralh, on the brief).

Methfessel & Werbel, attorneys for respondent (Marc L. Dembling and Stephen R. Katzman, of counsel and on the brief).

PER CURIAM

In this insurance coverage dispute, plaintiff Fouzia Salih appeals from the October 19, 2017 Law Division order granting summary judgment to defendant Ohio Security Insurance Company (Ohio Security), and dismissing her complaint with prejudice. We affirm.

We confine our review to the motion record before the Law Division judge, Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000), viewing the evidence in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

Plaintiff owned property on Main Street in Paterson, which she leased to Jehad Daher, who operated a restaurant on the property. On October 12, 2015, Daher contacted plaintiff's son, Massy Salih, and informed him that there was water and an odor at the restaurant. When Massy[1] arrived, he immediately noticed water and a very foul odor that prevented him from entering the property any further. Massy contacted Anytime Plumbing, which inspected the property and informed him that there was a clog in the restaurant's toilet, which resulted in dirty water, including human feces, overflowing out of the toilet, and into the

---

[1] We refer to the Salihs by their first names to avoid any confusion caused by their common surname. We intend no disrespect.

restaurant. The water caused heavy damage to the property's tiles, basement, first-floor bathroom, and kitchen, and destroyed the water heater and furnace.

The damage rendered the property inoperable, and Daher stopped paying rent. In order to restore the property, Massy hired Sure Kleen Restoration to remove the damaged tiles and dry wall, and to clean and sanitize the premises. Plaintiff also hired Metro Public Adjustment (Metro). Metro's representative, Chris Powers, determined that plaintiff's loss was caused by a discharge of water that resulted in $162,933.63 in total damages to the property.

Plaintiff filed a claim with her insurance provider, defendant Ohio Security. After an initial investigation and inspection by its insurance adjuster, defendant determined that the "cause of loss" was "from a back[-]up of raw sewage and not an overflow." As a result, in a letter dated February 5, 2016, defendant denied coverage for losses in excess of its $25,000 policy sublimit. In making its decision, defendant relied on its policy provisions and information gathered from Sure Kleen Restoration, confirming that the loss was from a sewer back-up, as well as the plumber, who "used a snake to clear the sewer line to remedy the issue."

According to defendant, although under the "Water Exclusion Endorsement," the insurance policy generally excluded water damage from

"[w]ater that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment," there was limited coverage extended under the "Custom Protector Plus Endorsement" (custom endorsement). Under the custom endorsement, the "Water Exclusion Endorsement" was "deleted and replaced," and coverage was extended for "direct physical loss or damage caused by water . . . [w]hich backs up into a building or structure through sewers or drains which are directly connected to a sanitary sewer or septic system."

However, coverage under the custom endorsement was limited to a maximum of $25,000 and

> [c]overage for loss of [b]usiness [i]ncome or [e]xtra [e]xpense, whether provided by this endorsement or elsewhere, [did] not apply if a loss [was] covered only as a result of this endorsement.
>
> If coverage [was] provided elsewhere in [the] policy for the same loss or damage as the coverage provided under this endorsement, the coverage under this endorsement [would] apply excess over that other coverage unless otherwise stated.

Based on these policy provisions, defendant issued checks to Sure Kleen Restoration for $16,652.76, and plaintiff for $8347.24, for a combined total of $25,000.

A-1179-17T1

Because plaintiff's expenses to maintain and restore the property exceeded $25,000, on June 6, 2016, plaintiff filed a complaint, alleging defendant "breached its contractual obligations to pay benefits to [p]laintiff for a loss covered under [d]efendant's policy of insurance." Relying on the custom endorsement, defendant moved for summary judgment. Plaintiff opposed the motion, relying on the business income provision of the insurance policy, which states that

> [defendant] will pay for the actual loss of [b]usiness [i]ncome [plaintiff] sustain[s] due to the necessary "suspension" of [plaintiff's] "operations" during the "period of restoration[.]" The "suspension" must be caused by direct physical loss of or damage to property . . . . The loss or damage must be caused by or result from a [c]overed [c]ause of [l]oss.

Although the "Causes of Loss-Special Form" (cause of loss form) excluded from coverage "[w]ater that backs up or overflows from a sewer, drain, or sump," the cause of loss form extended coverage for water damage, defined as an "accidental discharge or leakage of water . . . as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning, or other system or appliance . . . that is located on the described premises and contains water or steam." According to plaintiff, because the damage resulted from an "accidental discharge" of water from a blockage in the plumbing system within

the property, rather than a sewer back-up originating outside of the property, the $25,000 sublimit in the custom endorsement did not apply, and plaintiff was entitled to recoup lost business income.

Following oral argument, in an October 19, 2017 written opinion, the motion judge granted summary judgment to defendant. The judge determined that the custom endorsement limitation controlled and rejected plaintiff's reliance on "multiple cases from other jurisdictions to support" her position "that 'water must back-up through a sewer/drain/sump off the insured premises for the limitation relied upon by the defense to apply.'" Finding no genuine issue as to any material fact, the judge acknowledged that an insurance policy is a contract to be enforced as written, and that policy exclusions are ordinarily strictly construed against the insurer.

However, relying on Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co., 229 N.J. 196 (2017), the judge explained:

> [T]he parties here have presented the court with two different interpretation[s] of the subject "all-risk" policy. Defendant asserts that the policy is unambiguous and restricts [p]laintiff to a maximum sublimit in the amount [of] $25,000. . . . [P]laintiff asserts that [she] is also entitled to compensation for lost [b]usiness [i]ncome that resulted from the "accidental discharge of water from a toilet. . . ."

Similar to the <u>Oxford</u> policy, . . . [d]efendant's all-risk policy originally disclaimed coverage of all damage that resulted from "water that backs up or overflows from sewer, drain, or sump." . . . This exclusion was also stated in the [w]ater [e]xclusion [e]ndorsement, which specifically excluded coverage for "water that backs up or overflows or is otherwise discharged from a sewer, drain or sump, sump pump, or related equipment." . . . This provision was then deleted pursuant to the [custom endorsement].

. . . .

Th[e] [custom endorsement] language . . . is analogous to the [g]eneral [c]onditions clause of the <u>Oxford</u> insurance [policy] discussed by the Supreme Court of New Jersey. The [custom endorsement] put [p]laintiff on notice that the [b]usiness [i]ncome will not be covered if the loss coverage is only created as a result of the endorsement, namely [b]ack-[u]p of [s]ewers or [d]rains. Plaintiff may only seek coverage for the "accidental discharge of water from the toilet" under the [b]ack-[u]p of [s]ewer or [d]rains provision in the policy because the policy would have prohibited any coverage for the water damage. It is only the additional coverage extensions for back[-]up of sewers or drains that allows for coverage for discharge of water from the toilet. In the [g]eneral [p]olicy, the Cause of Loss-Special Form . . . clearly states that [d]efendant "will not pay for loss or damage caused directly or indirectly" . . . by "water that backs up or overflows from a sewer, drain, or swamp . . . ."

Therefore [p]laintiff purchased and bargained for coverage for water damage in the [custom endorsement] which states the most we will pay [for] loss [or] damage under this [c]overage [e]xtension is $25,000.[]

7

The judge entered a memorializing order and this appeal followed.

We review a grant of summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled.

> [I]f the evidence of record — the pleadings, depositions, answers to interrogatories, and affidavits — "together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Ibid. (quoting R. 4:46-2(c)).]

Thus, we must "first decide whether there was a genuine issue of material fact, and if none exists, then decide whether the trial court's ruling on the law was correct." Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 330 (2010) (citing Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). Here, we agree there are no factual disputes, and the issue on appeal presents solely a question of law. "[T]he interpretation of an insurance contract is a question of law which we decide independent of the trial court's conclusions." Simonetti v. Selective Ins. Co., 372 N.J. Super. 421, 428 (App. Div. 2004). We begin by reviewing some general principles.

According to New Jersey law, an "all-risk" policy like the policy at issue in this case, covers all fortuitous losses that an insured peril proximately causes, unless an exclusion applies. See Ariston Airline & Catering Supply Co., Inc. v. Forbes, 211 N.J. Super. 472, 479 (Law Div. 1986). Nonetheless, an insurance policy is "construed in accordance with principles that govern the interpretation of contracts . . . [and] the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (quoting Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010)).

To that end, "[i]n considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary meaning.'" Flomerfelt, 202 N.J. at 441 (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). However, "if the controlling language of a policy will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied." Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 416 (2016) (quoting Butler v. Bonner & Barnewell, Inc., 56 N.J. 567, 576 (1970)).

Further, "New Jersey courts often have construed ambiguous language in insurance policies in favor of the insured and against the insurer." Doto v.

9

Russo, 140 N.J. 544, 556 (1995). However, "in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability," Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990), "or write a better policy for the insured than the one purchased," Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). Moreover, "our courts will not manufacture an ambiguity where none exists." Oxford Realty Grp. Cedar, 229 N.J. at 207.

In order to determine whether an ambiguity exists in an insurance policy, the test is whether "'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Nunn v. Franklin Mut. Ins. Co., 274 N.J. Super. 543, 548 (App. Div. 1994) (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247 (1979)). However, simply because different wording could possibly make a provision clearer does not render the language ambiguous. Argent v. Brady, 386 N.J. Super. 343, 352 (App. Div. 2006). Additionally, "[a]n 'insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants.'" Oxford Realty Grp. Cedar, 229 N.J. at 207 (quoting Fed. Ins. Co. v. Campbell Soup Co., 381 N.J. Super. 190, 195 (App. Div. 2005)).

Applying these principles, we agree with the judge that defendant was entitled to summary judgment as a matter of law. Plaintiff argues the judge erred by relying on Oxford Realty to support her finding that the policy was not ambiguous, and erred in accepting defendant's interpretation "on how the loss is to be categorized." We disagree.

In Oxford Realty, plaintiff insured an apartment complex in Long Branch with defendant Travelers Insurance. 229 N.J. at 200. After suffering severe flood damage during Superstorm Sandy, plaintiff submitted a claim to Travelers for debris removal coverage, in addition to $1,000,000 in flood damage. Id. at 203-04. When Travelers responded "that all damage caused by the flood was subject to the $1,000,000 limitation for a flood occurrence" contained in the flood endorsement, plaintiff sued for the debris removal coverage. Id. at 204.

After analyzing the policy's Property Coverage Form, Flood Endorsement, Supplemental Coverage Declarations, and General Conditions, the Court concluded "[t]he terms of the [p]olicy unambiguously place[d] a $1,000,000 total on recovery for all flood occurrence losses." Id. at 209. The Court held that "the Flood Endorsement categorically denie[d] any flood damage coverage in excess of $1,000,000," even "if more than one Limit of Insurance applie[d],"

and that "the Flood Endorsement control[led] the extent of flood coverage and . . . [was] not modified by the rest of the Policy's terms." Ibid.

The Court determined that because the Property Coverage Form, "list[ed] 'Exclusions' and specifically disavow[ed] any coverage for flood[s] under the Property Coverage Form's terms," id. at 202, "[i]t [was] undisputed that, absent the Flood Endorsement, the Policy would not cover any flood damage." Id. at 209. Therefore, according to the Court, "the parties to this insurance contract added a Flood Endorsement to the Policy to provide for flood occurrence coverage," id. at 202, but the Supplemental Coverage Declaration capped recovery for flood damage at $1,000,000. Id. at 203.

Here, like Oxford Realty, defendant's policy originally stated that "[defendant] will not pay for loss or damage caused directly or indirectly" by "water that backs up or overflows from a sewer, drain, or sump." The Water Exclusion Endorsement also specifically excluded coverage for "[w]ater that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump, or related equipment." However, this exclusionary language was "deleted and replaced" by the custom endorsement, which added water damage coverage for sewer backups, similar to how Traveler's Flood Endorsement added coverage for floods in Oxford Realty. However, the custom endorsement also

limited recovery to a maximum of $25,000, and excluded loss for business income or extra expenses, analogous to the General Conditions clause in Oxford Realty.

We are satisfied that the policy terms are clear, unambiguous, and support defendant's interpretation. Like the judge, we reject plaintiff's attempt to create ambiguity and to support an alternate interpretation of the policy provisions by relying on "case law . . . from jurisdictions throughout the United States that differentiate[] a 'sewer back-up' from an 'accidental discharge of water.'" As the Court acknowledged in Oxford Realty, "the separate presentation of an insurance policy's declarations sheet, definition section, and exclusion section [does not] necessarily give rise to an ambiguity," id. at 207-08 (citing Zacarias v. Allstate Ins. Co., 168 N.J. 590, 602-03 (2001)), and neither does the suggestion of "'two conflicting interpretations . . . by the litigants.'" Id. at 207 (quoting Fed. Ins. Co., 381 N.J. Super. at 195).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1179-17T1