NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3434-14T1

MICHAEL ABBOUD,

 Plaintiff-Appellant, APPROVED FOR PUBLICATION

v. JUNE 21, 2017

 APPELLATE DIVISION
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

 Defendant-Respondent.
___________________________________

 Argued December 20, 2016 – Decided June 21, 2017

 Before Judges Ostrer, Leone and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Monmouth County,
 Docket No. L-680-14.

 Lawrence R. Lonergan argued the cause for
 appellant.

 Andrew L. Indeck argued the cause for
 respondent (Weber Gallagher Simpson
 Stapleton Fires & Newby, LLP, attorneys; Mr.
 Indeck, of counsel and on the brief; Jane S.
 Kelsey, on the brief).

 The opinion of the court was delivered by

OSTRER, J.A.D.

 In this insurance coverage dispute, we interpret an

"insured vs. insured" exclusion in a directors and officers

(D&O) liability policy. Generally speaking, such exclusions bar
coverage for claims by one insured director or officer against

another. Plaintiff Michael Abboud sought indemnity and a

defense in connection with counterclaims made against him by

fellow officers of Monarch Medical PET Services, LLC (Monarch).

Defendant National Union Fire Insurance Company of Pittsburgh,

Pa., eventually denied coverage based on the insured vs. insured

exclusion. Abboud filed a declaratory judgment action against

National Union, which ended in summary judgment dismissal and

the present appeal.

 We discern no ambiguity in the exclusion, and find no basis

for Abboud's argument that a showing of collusion between the

insureds is required to invoke it. We also find no merit in his

argument that National Union should be barred from denying

coverage because it would violate his reasonable expectations.

We therefore affirm.

 I.

 Abboud started the underlying litigation by suing: Monarch;

four of its members and managers — Patrick Collins, Andrew

Kreamer Rooke, Sr., Gary Moyers and William McCue; and a non-

member officer, Andrew Kreamer Rooke, Jr. (collectively, "the

defendants"). Abboud was a forty-percent owner of Monarch,

 2 A-3434-14T1
which operates and leases PET/CT1 equipment. He alleged the four

member-managers tried to remove him from Monarch's board of

managers and his position as its chief executive officer. In

his verified complaint, Abboud alleged the defendants engaged in

oppressive acts and breached their fiduciary duty and the firm's

operating agreement. He sought: reinstatement, salary and other

employment benefits; an injunction restraining the defendants

from interfering with his access to the premises, its computers

and its employees; as well as attorneys' fees and expenses.

 The verified complaint did not address the defendants'

asserted reasons for their actions, but we gather they concerned

Monarch's involvement with two other companies, Monarch Medical

Imaging Equipment, Inc. (Monarch Imaging) — a corporation that

Abboud and Collins owned — and Monarch Medical Technologies, LLC

(Monarch Technologies) — a wholly owned subsidiary of Monarch

Imaging. We infer this from Abboud's complaint, which sought to

justify certain payments Monarch made to Monarch Imaging and the

existence of other agreements between Monarch and Monarch

Technologies.

 In their responsive pleading, Monarch and the individual

defendants other than Collins asserted various counterclaims

1
 PET/CT refers to positron emission tomography – computer
tomography. Stedman's Medical Dictionary 468, 1468 (28th ed.
2006).

 3 A-3434-14T1
against Abboud. They alleged Abboud engaged in self-dealing and

exploited Monarch's opportunities for his personal gain or that

of his other companies. Monarch independently alleged Abboud

breached his loyalty and fiduciary duties, and engaged in

intentional interference with prospective economic advantage.

The company and the individual counterclaimants also alleged

breach of the operating agreement. Additionally, they sought a

declaratory judgment that grounds existed for involuntarily

withdrawing Abboud's membership interest in the company.

 All the defendants in Abboud's underlying lawsuit sought

and obtained an acknowledgement of partial coverage from

National Union, subject to a reservation of rights, under the

Employment Practices Liability (EPL) section of Monarch's multi-

coverage policy, which also included a D&O liability section.

It appears the defendants made their request in a timely manner.

National Union sent its coverage letter on March 13, 2013, a

month after Abboud filed his complaint and a month before the

filing of the answer and counterclaims.

 By contrast, Abboud did not notify National Union of the

counterclaims against him until November 20, 2013, when his

attorney gave "notice of claims covered" under the D&O section

of the policy. The attorney asserted the notice was late

because Monarch and National Union had delayed responding to his

 4 A-3434-14T1
requests for information about coverage. National Union did not

respond to the notice.

 In February 2014, Abboud filed his declaratory judgment

action. Expressly invoking and quoting the policy's D&O

section, Abboud sought indemnity and defense costs for the

counterclaims in the underlying lawsuit. Referring to the

November 20, 2013 notice of claim, he asserted National Union

failed to respond to his purported "written claim for defense

and indemnification." He argued that its failure barred

National Union from denying coverage based on waiver and

estoppel principles.

 In its answer, National Union denied its policy provided

indemnity or defense costs coverage for the counterclaims

against Abboud. Limited paper discovery followed. National

Union objected to many of Abboud's discovery demands, including

requests for claim processing documents and for the

identification of an employee familiar with the policy's D&O

section. Shortly thereafter, National Union filed its summary

judgment motion. Although Abboud's attorney asserted that

National Union's discovery responses were deficient, he did not

formally seek to compel further discovery.

 In support of its summary judgment motion, National Union

contended the insured vs. insured exclusion within the D&O

 5 A-3434-14T1
section precluded coverage. In opposition, Abboud argued the

exclusion applied only if there was collusion, and whether there

was such collusion presented a genuine issue of material fact.

He also contended enforcing the exclusion would frustrate his

reasonable expectations. He based his estoppel argument on

National Union's failure to respond to the November 2013 notice.

He also argued National Union's motion was premature because

discovery remained pending.

 In granting the motion, Judge Katie A. Gummer found that

the insured vs. insured exclusion plainly barred Abboud's claim

for coverage. The court rejected Abboud's arguments about

collusion and reasonable expectations. Also, estoppel did not

apply because Abboud failed to demonstrate any reliance on

National Union's inaction. The judge rejected Abboud's

prematurity argument because he failed to identify the discovery

that would create a dispute over material facts.

 On appeal, Abboud renews the arguments he presented to the

trial court. He adds that the court should have sua sponte

found coverage under the policy's EPL section.

 II.

 We review de novo the trial court's grant of summary

judgment, applying the same standard as the trial court. Templo

Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh,

 6 A-3434-14T1
Pa., 224 N.J. 189, 199 (2016). The movant is entitled to

summary judgment if the record shows "there is no genuine issue

as to any material fact challenged and . . . the moving party is

entitled to a judgment or order as a matter of law." Ibid.

(quoting R. 4:46-2(c)). Interpretation of an insurance policy

also presents a legal question, which we review de novo.

Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic

Med. & Physical Therapy, 210 N.J. 597, 605 (2012).

 The Templo Fuente Court reviewed the rules of construction

that apply to insurance policies:

 If the plain language of the policy is
 unambiguous, we will not engage in a
 strained construction to support the
 imposition of liability or write a better
 policy for the insured than the one
 purchased.

 When the provision at issue is subject
 to more than one reasonable interpretation,
 it is ambiguous, and the court may look to
 extrinsic evidence as an aid to
 interpretation. Only where there is a
 genuine ambiguity, that is, where the
 phrasing of the policy is so confusing that
 the average policyholder cannot make out the
 boundaries of coverage, should the reviewing
 court read the policy in favor of the
 insured. When construing an ambiguous
 clause in an insurance policy, courts should
 consider whether clearer draftsmanship by
 the insurer would have put the matter beyond
 reasonable question.

 [Templo Fuente, supra, 224 N.J. at 200
 (internal quotation marks and citations
 omitted).]

 7 A-3434-14T1
Consistent with these rules, our courts will enforce

exclusionary clauses if "specific, plain, clear, prominent, and

not contrary to public policy," notwithstanding that exclusions

generally "must be narrowly construed," and the insurer bears

the burden to demonstrate they apply. Flomerfelt v. Cardiello,

202 N.J. 432, 441-42 (2010) (internal quotation marks and

citations omitted).

 We look first to the policy language, which we conclude

plainly and unambiguously bars coverage because the

counterclaims against Abboud fall within its insured vs. insured

exclusion. We begin with the language of the relevant provision

defining the D&O coverage before turning to the exclusion.

 As D&O Coverage, National Union agreed to

 pay the Loss of an Individual Insured of the
 Company arising from a Claim made against
 such Individual Insured for any Wrongful Act
 of such Individual Insured, except when and
 to the extent that the Company has
 indemnified such Individual Insured. The
 Insurer shall, in accordance with and
 subject to Clause 7 of this D&O Coverage
 Section, advance Defense Costs of such Claim
 prior to its final disposition.

Except for "Company," which is defined to mean Monarch in the

policy's "General Terms" section, the highlighted terms are

separately defined within the D&O section. These definitions

establish the coverage's scope.

 8 A-3434-14T1
 An "Individual Insured" includes an "Executive" or

"Employee of a Company." The two categories are mutually

exclusive. An "Executive" refers to "any past, present or

future duly elected or appointed director, officer, management

committee member or member of the Board of Managers . . . ."

"Employee" explicitly excludes Executives, as the definition

states it means "any past, present, or future employee, other

than an Executive of a Company . . . ." A "Wrongful Act" by an

"Executive or Employee of a Company" means "any breach of duty,

neglect, error, misstatement, misleading statement, omission or

act . . . in their respective capacities as such, or any matter

claimed against . . . [them] solely by reason of his or her

status as an Executive or Employee of a Company . . . ."

 The insured vs. insured exclusion is one of several

exclusions in the D&O section for which the insurer "shall not

be liable to make any payment for Loss in connection with any

Claim made against the Insured." The exclusion disallows claims

depending on which party raises them; specifically, it excludes

any claim "which is brought by or on behalf of a Company or

Individual Insured, other than an Employee of the Company

. . . ."2

2
 The insured vs. insured exclusion has various exceptions that
do not apply here.

 9 A-3434-14T1
 There is nothing ambiguous, convoluted, or opaque about

this exclusion when interpreted in accord with the definitional

provisions. The exclusion disallows coverage when the claim is

raised by either an executive of the company (i.e., an

"Individual Insured" who is not an "Employee") or the company

itself. Its application here is equally clear. The claims

raised against Abboud were brought by Monarch and five of its

executives (whose status within the company Abboud does not

contest). Therefore, the insured vs. insured exclusion bars

these claims.

 Abboud seeks to avoid the plain import of the exclusion on

two grounds. First, he contends it violates his reasonable

expectations. Second, he contends the exclusion applies only in

cases of collusion between the individual insureds, about which

there remains an issue of fact. We are unpersuaded.

 Our courts "have recognized the importance of construing

contracts of insurance to reflect the reasonable expectations of

the insured in the face of ambiguous language and phrasing, and

in exceptional circumstances, when the literal meaning of the

policy is plain." Doto v. Russo, 140 N.J. 544, 556 (1995)

(citation omitted); see also Pizzulo v. N.J. Mfrs. Ins. Co., 196

N.J. 251, 271 (2008) ("Indeed, in some circumstances, we have

recognized that it might be appropriate to permit an insured's

 10 A-3434-14T1
reasonable expectation to overcome the plain meaning of a

policy."); Werner Indus. v. First State Ins. Co., 112 N.J. 30,

35-36 (1988) ("At times, even an unambiguous contract has been

interpreted contrary to its plain meaning so as to fulfill the

reasonable expectations of the insured . . . .").

 These exceptional circumstances are narrowly confined. The

"reasonable expectations" doctrine applies to policy forms that

have the characteristics of an adhesion contract. See, e.g.,

Doto, supra, 140 N.J. at 556. Courts are more inclined to apply

the doctrine in cases of personal lines of insurance obtained by

an unsophisticated consumer. See, e.g., Oxford Realty Grp.

Cedar v. Travelers Excess & Surplus Lines Co., ___ N.J. ___, ___

(2017) (slip op. at 15-16); Werner Indus., supra, 112 N.J. at

38; see also Nunn v. Franklin Mut. Ins. Co., 274 N.J. Super.

543, 550 (App. Div. 1994). Yet, the doctrine has been applied

to commercial lines, as well. See, e.g., Nav-Its, Inc. v.

Selective Ins. Co. of Am., 183 N.J. 110, 123-24 (2005) (applying

the doctrine to a pollution exclusion clause of a building

contractor's comprehensive general liability insurance policy);

Sparks v. St. Paul Ins. Co., 100 N.J. 325, 338-39 (1985)

(applying doctrine to a legal malpractice policy).

 Courts may vindicate the insured's reasonable expectations

over the policy's literal meaning "if the text appears overly

 11 A-3434-14T1
technical or contains hidden pitfalls, cannot be understood

without employing subtle or legalistic distinctions, is obscured

by fine print, or requires strenuous study to comprehend."

Zacarias v. Allstate Ins. Co., 168 N.J. 590, 601 (2001)

(citations omitted) (rejecting "reasonable expectations"

argument because the policy language was "not so confusing that

the average policyholder cannot make out the boundaries of the

coverage," nor was an "entangled and professional interpretation

of an insurance underwriter . . . pitted against that of an

average purchaser of insurance" (internal quotation marks and

citation omitted)).

 The expectations of coverage must be real. See Werner

Indus., supra, 112 N.J. at 39 (remanding for a factual

determination whether the insured, through its broker, conveyed

an intent contrary to the policy's unambiguous language); Di

Orio v. N.J. Mfrs. Ins. Co., 79 N.J. 257, 270 (1979) (declining

to deviate from policy language where "as a factual matter the

record is barren of any suggestion that the [insureds]

'expected' that they had primary or excess coverage"). The

expectations must also be "objectively reasonable." See, e.g.,

Templo Fuente, supra, 224 N.J. at 210.

 In assessing whether the expectations are objectively

reasonable, a court will consider communications regarding the

 12 A-3434-14T1
coverage between the insured or its broker and the insurer or

its agent that relate to the insured's expectations. See, e.g.,

Doto, supra, 140 N.J. at 557-58. A court must also consider

whether the scope of coverage is so narrow that it "would

largely nullify the insurance" and defeat the purpose for which

it was obtained. See Sparks, supra, 100 N.J. at 337-39

(internal quotation marks and citation omitted). For example,

the Court in Sparks concluded that a claims-made legal

malpractice policy that excluded claims arising out of

occurrences preceding the policy period "d[id] not accord with

the objectively reasonable expectations of the purchasers of

professional liability insurance." Id. at 340. Additionally, a

court must consider whether policies with "unrealistically

narrow coverage" cause "broad injury to the public at large[,]"

which may preclude enforcement on public policy grounds. Id. at

340-41.

 Applying these principles, we discern no basis to set aside

the insured vs. insured exclusion based on Abboud's alleged

expectations of coverage. The policy provides commercial

insurance to a presumably sophisticated consumer. The public at

large has no identified interest in finding coverage. The

policy language is straightforward, as discussed above, and is

"not so confusing that the average policyholder cannot make out

 13 A-3434-14T1
the boundaries of the coverage." Zacarias, supra, 168 N.J. at

601 (internal quotation marks and citation omitted). The record

is also devoid of competent evidence of Abboud's expectations of

coverage or proof that such expectations would be objectively

reasonable, given that D&O insurance typically covers liability

for third-party claims, see Biltmore Assocs., LLC v. Twin City

Fire Ins. Co., 572 F.3d 663, 668 (9th Cir. 2009) (stating,

"[t]he reasonable expectations of the parties [to a D&O policy]

were that they were protecting against claims by outsiders, not

intra-company claims"), and enforcement of the exclusion

nonetheless leaves broad D&O coverage. In sum, the policy's

plain language need not be tailored to conform to Abboud's

alleged expectations.

 We also reject Abboud's contention that proof of collusion

is a prerequisite to applying the insured vs. insured exclusion.

As our courts have not expressly addressed the question, Abboud

relies on several decisions from other jurisdictions adopting

this view,3 and there are others. See 3-22 New Appleman Law of

Liability Insurance § 22.06(2)(c) n.30 (2017) (collecting

cases). However, the contrary view is both more persuasive and

more consistent with our rules of construction.

3
 The cases Abboud cites were not formally published;
consequently, we will not address them.

 14 A-3434-14T1
 The insured vs. insured exclusion was, reportedly, the

insurance industry's "reaction to several lawsuits in the mid-

1980s in which insured corporations sued their own directors to

recoup operational losses caused by improvident or unauthorized

actions." Biltmore Assocs., supra, 572 F.3d at 668; see also

Appleman, supra, § 22.06(2)(c). These suits thus extended

liability coverage to intra-company claims and transformed the

nature of the insurance; specifically, they "turned liability

insurance into casualty insurance, because the company would be

able to collect from the insurance company for its own mistakes,

since it acts through its directors and officers." Biltmore

Assocs., supra, 572 F.3d at 669.

 Although the specific formulation of this exclusion may

vary from policy to policy, its purpose was not simply to bar

collusive claims — as Abboud implies. Instead, it was intended:

 to exclude coverage both of collusive suits
 — such as suits in which a corporation sues
 its officers or directors in an effort to
 recoup the consequences of their business
 mistakes, thus turning liability insurance
 into business-loss insurance — and of suits
 arising out of those particularly bitter
 disputes that erupt when members of a
 corporate, as of a personal, family have a
 falling out and fall to quarreling.

 [Level 3 Commc'ns, Inc. v. Fed. Ins. Co.,
 168 F.3d 956, 958 (7th Cir. 1999) (emphasis
 added) (citations omitted).]

 15 A-3434-14T1
See also Biltmore Assocs., supra, 572 F.3d at 669 ("The

exclusion protects of course against collusion, and also against

the risk of selling liability insurance for what amounts to a

fidelity bond."); Appleman, supra, § 22.06(c).

 The question is whether this history requires us to deviate

from the exclusion's plain language by requiring an insurer to

prove collusion as Abboud contends. We think not. As Judge

Posner concluded in Level 3 Communications, the argument that

collusion must be proved "confus[es] a rule with its rationale

. . . ." Supra, 168 F.3d at 958. The drafters were free to

develop a standard that assumed some risk of over-inclusiveness

— that is, to include claims that did not involve collusion or

corporate family spats — to achieve the benefit of simplicity

and ease of enforcement. After all, "[a] standard, like 'no

coverage for collusive suits or lovers' quarrels,' [would be]

contoured exactly to [the exclusion's historical] purpose, but

it cannot be applied without a potentially costly, time-

consuming, and uncertain inquiry into the nature of the

underlying dispute sought to be covered." Ibid.

 In any event, it is clear from the face of Abboud's

verified complaint, and the counterclaims, that what we have is

one of those "particularly bitter disputes that erupt when

members of a corporate . . . family have a falling out . . . ."

 16 A-3434-14T1
Ibid. Although there is no evidence of collusion, enforcing the

insured vs. insured exclusion here nonetheless satisfies one of

the primary historical goals of the exclusion.4

 In sum, guided by our rules of construction that place

dispositive weight on the plain language of a provision that is

neither ambiguous, convoluted nor opaque, we reject Abboud's

proposed gloss on the insured vs. insured exclusion's plain

language. We are in good company. See, e.g., Sphinx Int'l,

Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d

1224, 1229-30 (11th Cir. 2005) (applying Florida law); Level 3

Commc'ns, supra, 168 F.3d at 958; Foster v. Ky. Hous. Corp., 850

F. Supp. 558, 561 (E.D. Ky. 1994); Durant v. James, 189 So. 3d

993, 996 (Fla. Dist. Ct. App.), review denied, No. SC16-1004,

2016 Fla. LEXIS 1989 (Sept. 7, 2016); Robinson v. Rockhill Ins.

Co., 139 So. 3d 1031 (La. Ct. App. 2014).5

4
 At least one insurer has drafted an insured vs. insured
exclusion that expressly provides that it applies regardless of
whether the claim is collusive. See Westchester Fire Ins. Co.
v. Wallerich, 563 F.3d 707, 710 (8th Cir. 2009). That
development lends no support to Abboud's argument, but merely
reflects an insurer's effort to avoid the headaches such an
argument creates.
5
 We note, happily, that this case does not require us to address
other knotty issues involving the scope of insured vs. insured
exclusions. Questions have arisen when some claimants are
insureds and others are not, see, e.g., Miller v. St. Paul
Mercury Ins. Co., 683 F.3d 871 (7th Cir. 2012); and when claims
are brought in the context of bankruptcy or other insolvency-
 (continued)

 17 A-3434-14T1
 III.

 Abboud's remaining arguments lack sufficient merit to

warrant extended discussion. R. 2:11-3(e)(1)(E). Abboud's

estoppel argument falls short because he has failed to show any

detrimental reliance on National Union's alleged unjustified

delay in denying coverage. See Knorr v. Smeal, 178 N.J. 169,

178 (2003) (noting that estoppel requires a showing that the

adversary "engaged in conduct, either intentionally or under

circumstances that induced reliance, and that plaintiffs acted

or changed their position to their detriment"); Greenberg &

Covitz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 312 N.J.

Super. 251, 265 (App. Div. 1998) ("[D]etrimental reliance by the

insured is a prerequisite to finding that coverage has been

expanded by estoppel."), modified on other grounds, 161 N.J. 143

(1999).

 His argument that summary judgment was premature fails

because he does not identify what discovery he needs. See

(continued)
related proceedings, see, e.g., W Holding Co. v. AIG Ins. Co.,
748 F.3d 377, 385-86 (1st Cir. 2014) (discussing split in case
law on whether insured vs. insured exclusion applies to Federal
Deposit Insurance Corporation); Appleman, supra, § 22.06(2)(c)
(noting the issue of the "Insured vs. Insured exclusion in the
bankruptcy context . . . is becoming less significant as more
D&O policies contain exclusions for claims 'brought or
maintained by or on behalf of a bankruptcy or insolvency
trustee, examiner, receiver or similar official'."); see also 9A
Couch on Insurance 3d § 131:36 n.1 (2015) (collecting cases).

 18 A-3434-14T1
Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App.

Div. 2007) ("A party opposing summary judgment on the ground

that more discovery is needed must specify what further

discovery is required, rather than simply asserting a generic

contention that discovery is incomplete.").

 Finally, we decline to reach Abboud's claim that he was

entitled to coverage under the policy's EPL section (although

there appears to be little that is employment-related in the

counterclaims against Abboud). Abboud invoked only the D&O

section in his notice of claim, in his declaratory judgment

complaint, in discovery, and in argument before the trial court.

See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)

(stating that "appellate courts will decline to consider

questions or issues not properly presented to the trial court

when an opportunity for such a presentation is available unless

the questions . . . go to the jurisdiction of the trial court or

concern matters of great public interest" (internal quotation

marks and citation omitted)).

 Affirmed.

 19 A-3434-14T1