**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3380-16T3

BEAUTY PLUS TRADING COMPANY, INC.,

    Plaintiff-Appellant,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

    Defendant-Respondent.

_____

        Argued May 17, 2018 — Decided August 14, 2018

        Before Judges Simonelli and Gooden Brown.

        On appeal from Superior Court of New Jersey,
        Law Division, Bergen County, Docket No.
        L-9387-15.

        Alexander J. Anglim argued the cause for
        appellant (Hartmann & Anglim, LLC, attorneys;
        Alexander J. Anglim, on the briefs).

        Timothy G. Hourican argued the cause for
        respondent (Brown Gavalas & Fromm, LLP,
        attorneys; Robert J. Brown, on the brief).

PER CURIAM

    In this insurance coverage case, plaintiff Beauty Plus

Trading Company, Inc. appeals from the March 7, 2017 Law Division

orders granting summary judgment to defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and denying its cross-motion for summary judgment. We affirm.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)). Plaintiff is a wholesale distributor of hair extensions and similar products with a warehouse and offices in Moonachie, New Jersey. Plaintiff's warehouse is open Monday through Friday until 6:00 p.m.

On November 10, 2014, a shipping container with 487 cartons of "human hair weaves" left the port of Qingdao, China, for plaintiff's warehouse in Moonachie. The container arrived at Port Elizabeth, New Jersey, on December 9, 2014. Harbor Express Trucking Company picked up the container from Elizabeth at approximately 11:37 a.m. on Friday, December 12, 2014, and delivered it to plaintiff's warehouse at 5:00 p.m. that day with the original seal intact. Brandon Cho, plaintiff's assistant warehouse manager, signed a "Freight Memo (Bill)" from Harbor Express to confirm receipt of the container.

With only one hour left before closing, warehouse managers determined they did not have enough time to unload the container because it would take over an hour to unload, and their employees were "particularly reluctant to work overtime on Fridays." Therefore, the workers cut the seal on the container, opened the doors, and backed the container into the warehouse unloading bay, where they left it until they returned to work on Monday. However, when the workers arrived at work at about 7:00 a.m. on Monday, the container was missing. Warehouse surveillance video revealed that on Saturday, December 13, 2014, at approximately 9:00 p.m., someone drove a white truck "up to the container, hooked a tractor to the chassis, and drove away" with it. Plaintiff reported the theft to the police, who later recovered the chassis and container with 397 cartons of goods missing.

Plaintiff filed a claim with defendant under their marine cargo policy, which "cover[ed] all shipments of lawful goods and merchandise . . . consisting principally of new wigs and similar merchandise incidental" to plaintiff's business "[a]gainst all risk of physical loss or damage from any external cause" occurring "on or after August 15, 2011." The policy insured plaintiff against perils "of the seas and inland waters, fires, assailing thieves, jettisons, barratry of the Master and Mariners, and all

other like perils, losses and misfortunes . . . except as may be otherwise provided . . . or endorsed" in the policy.

Under the policy's "Warehouse to Warehouse" clause, insurance coverage "attache[d] from the time the goods [left] the warehouse and/or store at the place named in the policy for the commencement of the transit" and continued until the goods were "delivered to final warehouse at the destination named in the policy or until the expiry of the fifteen . . . days (or thirty . . . days if the destination to which the goods [were] insured [was] outside the limits of the port) whichever [should] first occur."

After delivery, the policy's "Loading and Unloading" clause extended coverage for plaintiff's goods as follows:

> [A]fter they arrive[d] at the final destination, and continuing thereafter until they [were] unloaded (including into containers, trailers and rail cars) and throughout the unloading process, not to exceed [seventy-two] hours after arrival of the delivering conveyance at final destination but not later than [twenty-four] hours after the receiver ha[d] knowledge of the arrival of the delivering conveyance.

Additionally, the policy's "Storage Coverage" endorsement specifically provided coverage for "goods and merchandise . . . while temporarily stored in [plaintiff's] warehouses[.]"

Defendant hired Global Marine Surveys, Inc. to investigate plaintiff's claim. Using the policy's valuation provision, Global Marine calculated the value of the loss at $283,804.46 in damages, plus $1378.55 for "the trucking charges and the towing and storage charges[,]" amounting to a total loss of $285,183.01. However, in a March 2, 2015 letter, relying on Global Marine's investigation and the policy's provisions, defendant denied coverage for the theft under the "Warehouse to Warehouse," "Loading and Unloading," and "Storage Coverage" clauses.

According to defendant, because "the [Warehouse to Warehouse clause] provide[d] coverage for [plaintiff's] goods while such goods were in transit and end[ed] when the goods [were] no longer in transit[,]" there was no coverage "because the subject shipment . . . had reached [its] final destination" at the time of the theft. Defendant explained further that coverage under the policy's "Loading and Unloading clause had also terminated . . . at the time the loss occurred" because "the theft . . . occurred more than [twenty-four] hours after [plaintiff] had knowledge of the arrival of the container at its premises." Additionally, according to defendant, because "the subject goods were not being temporarily stored in the warehouse at the time they were stolen[,]" but "were outside [plaintiff's]

warehouse" instead, the "Storage Coverage" endorsement did not apply.

Defendant's letter went on to "discuss another issue that . . . preclude[d] coverage . . . under the [p]olicy." According to defendant, the policy did not cover "reckless and grossly negligent acts or omissions[,]" and its investigation showed that plaintiff was "reckless and/or grossly negligent in failing to protect and secure the subject shipment prior to its theft." In particular, their investigation

> revealed that a king pin was not used to lock the container chassis while on the premises; the container was not kept in a secured and/or fenced in area while on the premises; there was no security while the container was on the premises; the goods were not stored in the warehouse at the premises[;] and no means or precautions were taken to prevent the theft of the container.

On October 27, 2015, plaintiff filed a complaint against defendant, alleging breach of contract and seeking a declaratory judgment that its marine cargo policy covered its claim for the stolen goods. After discovery concluded, the parties filed cross-motions for summary judgment. Following oral argument, Judge Charles E. Powers, Jr. granted defendant summary judgment and denied plaintiff's cross-motion in corresponding March 7, 2017 orders.

6

In his written statement of reasons accompanying the orders, the judge determined that there was no coverage under the policy's "Warehouse to Warehouse" clause because "[that] clause only applie[d] while the goods [were] in transit or awaiting transit. Here, the goods were delivered and [plaintiff] exercised dominion and control over them." The judge also determined that the "Storage Coverage" endorsement did "not provide coverage for the loss" because that clause "only applie[d] when the goods [were] being stored in [plaintiff's] warehouse[,]" and "it [was] undisputed that the goods were not being stored in the warehouse at the time of the theft."

Additionally, the judge determined that the "Loading and Unloading" clause did not provide coverage for the loss because the clause "unambiguously provide[d] coverage for up to [twenty-four hours] after the goods [were] received at their final destination. Here, [plaintiff] received the goods and chose not to secure them within the [twenty-four-hour] period." The judge explained that

> [t]here is nothing inequitable [about] having [plaintiff] assume the risk of loss from Saturday at 5 p.m. onward. Rather, it is clear that the policy was written so that the risk of loss would pass back to the insured after the [twenty-four] hours had elapsed. The [c]ourt will not re-write an unambiguous policy.

7

The judge rejected plaintiff's argument that the next business day rule extended coverage to Monday under the "Loading and Unloading" clause of the policy. The judge acknowledged that under <u>Vuarnet Footwear, Inc. v. Sea-Rail Service Corp.</u>, 334 N.J. Super. 442, 454 (App. Div. 2000), the next business day rule extended the time "by operation of law" until the next business day "where a contractual time period within which an act must be performed falls on a Saturday or Sunday[.]" The judge noted "courts have found that when a party's ability to perform an obligation is frustrated by the deadline falling on a weekend, the deadline will be tolled until the following business day." However, the judge explained that under the case law, the next business day rule was not applicable where "there was no act to be performed by the insured. Rather, the coverage merely lapsed on a weekend."

Thus, in rejecting plaintiff's reliance on <u>Vuarnet</u>, the judge reasoned:

> Plaintiff's reliance upon <u>Vuarnet Footwear</u> is misplaced. First, unlike the present case, <u>Vuarnet Footwear</u> involved an act to be performed by the insured within the contractual period—that the insured would effectuate transit of the goods through their trucking service. [Plaintiff] argues that the act to be performed was the unloading of the cargo and their ability to do so was frustrated since the cargo was delivered on a Friday evening. However, the Loading and

A-3380-16T3

Unloading clause does not contemplate that the parties perform an act—it merely extends coverage for a [twenty-four-hour] period after the delivery. In other words, the fact that the shipment was delivered on a Friday evening did not prevent [plaintiff] from carrying out a requirement under the contract. . . . Here, there was no act for [plaintiff] to perform—merely coverage by [defendant] for [twenty-four hours] after delivery to the warehouse.

Secondly, assuming arguendo that the unloading of the goods could constitute an act to be performed for purposes of the next business day rule, the Vuarnet Footwear court's discussion of this principle was based on the facts of that case. The court noted that the insured could not complete transit of the goods within the required [thirty days] and the final day of the period fell on a weekend. In the present case, the goods had actually arrived at the warehouse and had been received by [plaintiff]. In Vuarnet Footwear, the goods were at another location and apparently could not be accessed before coverage expired. Thus, the logic behind the next business day rule is not applicable in this case.

Judge Powers also rejected plaintiff's reliance on Estate of Harrington v. City of Linden, 338 N.J. Super. 500 (App. Div. 2001), to support their contention that "their ability to unload the goods [was] irrelevant since the expiration fell on a weekend." The judge explained:

[Plaintiff] contends that Estate of Harrington supports the proposition that it is irrelevant that they could have unloaded the goods on Friday evening or over the weekend. However, this is a misinterpretation

of the court's ruling. The court merely concluded that the applicable provision of the Tort Claims Act allowed the plaintiff to effectuate delivery by certified mail or hand-delivery. In other words, since the plaintiff was unable to effectuate hand delivery on Saturday, she was entitled to do so on the next business day. Specifically, the court noted that there was "ample support for the proposition that where the ninetieth day after accrual of a tort claim against a public entity falls on a Saturday, the required notice can be timely filed by hand-delivery on the following Monday." Id. at 502. As such, Estate of Harrington does not support [p]laintiff's position.

This appeal followed.

On appeal, plaintiff raises the following points for our consideration:

POINT I

THE TRIAL COURT ERRED BY FAILING TO APPLY THE 'NEXT BUSINESS DAY' RULE TO THE TIME LIMIT IN CLAUSE [SIXTY-SEVEN] OF THE POLICY.

A. THE NEXT BUSINESS DAY PRINCIPLE APPLIES TO TIME LIMITS EMBEDDED IN INSURANCE POLICY CLAUSES, PURSUANT TO [VUARNET FOOTWEAR].

B. THE TRIAL COURT'S ANALYSIS OF VUARNET FOOTWEAR WAS FLAWED.

C. [DEFENDANT'S] ADDITIONAL ARGUMENTS ARE ALSO FLAWED.

D. APPLICATION OF THE NEXT BUSINESS DAY RULE IS REQUIRED UNDER WELL-ESTABLISHED PRINCIPLES OF NEW JERSEY INSURANCE LAW.

10

POINT II

IN LIGHT OF THE UNDISPUTED FACTS, INCLUDING THE UNDISPUTED VALUE OF THE LOSS, THE LOWER COURT SHOULD HAVE GRANTED PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT.

We review a motion for summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Ibid. (citations omitted) (quoting R. 4:46-2(c)).]

If there is no genuine issue of material fact, we must "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007), overruled by Wilson v. City of Jersey City, 209 N.J. 558 (2012)). We review issues of law de novo and accord no deference to the trial judge's legal conclusions.

11

Applying these principles, we affirm substantially for the reasons set forth by Judge Powers in his comprehensive and well-reasoned statement of reasons accompanying the corresponding orders. We add only the following comments.

"An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). Courts should interpret an insurance policy in accordance with the "plain and ordinary meaning" of its terms. Memorial Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (quoting Flomerfelt, 202 N.J. at 441). Because insurance policies are contracts of adhesion, courts should construe them liberally in favor of the insured, to afford coverage "to the full extent that any fair interpretation will allow." Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990) (quoting Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482 (1961)). However, in the absence of an ambiguity, courts should not "engage in a strained construction to support the imposition of liability." Ibid. They should also avoid writing "for the insured a better policy of insurance than the one purchased." Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529 (1989) (citation omitted).

Here, the plain language of the policy is unambiguous. Under the policy's "Warehouse to Warehouse" clause, coverage attached when the goods left Qingdao, China, on November 10, 2014, and terminated when the goods arrived at their final destination, plaintiff's warehouse in Moonachie, at approximately 5:00 p.m. on December 12, 2014. Under the policy's "Loading and Unloading" clause, the policy extended coverage for seventy-two hours after delivery, "but not later than" twenty-four hours after plaintiff had notice of delivery. Thus, under the plain language of the policy, the goods were insured until 5:00 p.m. on Saturday, December 13, 2014. Because the theft occurred at approximately 9:00 p.m. that day, the policy did not cover plaintiff's loss.

Plaintiff argues, however, that in spite of the plain language of the policy, the court should have applied the next business day rule to extend the policy's coverage until Monday, December 15, 2014. Generally, courts apply the next business day rule when the time for a party's performance under a contract or insurance policy expires on a weekend or holiday. See, e.g., Vuarnet Footwear, 334 N.J. Super. at 455 (applying the next business day rule to extend an insurance coverage period that lapsed on a Saturday to the following Monday, "particularly as it appear[ed] that its truck carrier . . . either did not have access to the bonded warehouse on weekends or did not itself initiate transport on those days");

Bohles v. Prudential Ins. Co. of Am., 84 N.J.L. 315, 316 (E. & A. 1913) (extending a one-month grace period for paying an insurance premium that lapsed on a Sunday until the next Monday, "the first day thereafter upon which business could be lawfully transacted").

However, if the contract does not require the party to act or an event to occur within the designated period, the fact that the final day falls on a weekend does not affect the parties' performance under the contract. See Flowers by Di Alton's v. Am. Ins. Co., 39 N.J. Super. 44, 48-49 (Law Div.), aff'd, 42 N.J. Super. 493 (App. Div. 1956) (finding the next business day rule only applied to "acts to be performed" cases). In that event, the rule does not apply, and "an ordinary contract of insurance . . . for a specified period of time will not be extended when the last day of the period falls on [a weekend]." Id. at 49.

Here, the policy did not require plaintiff to perform an act, such as unloading the goods, within the twenty-four hours of extended coverage. Nor did the contract require any other event to occur within the designated period. Plaintiff was free to leave the goods in the container as it chose to do. Plaintiff's decision did not, however, prevent the policy from lapsing and transferring the risk of loss back to plaintiff at 5:00 p.m. on Saturday, December 13, 2014. To rule otherwise would grant

14                                                                    A-3380-16T3

plaintiff "a better policy of insurance than the one [it] purchased." Walker Rogge, 116 N.J. at 529.

Equally unavailing is plaintiff's argument that the court should interpret the contract in favor of coverage to conform to its objectively reasonable expectations. Where the language of a contract is ambiguous, courts apply the doctrine of reasonable expectations to "enforce only the restrictions and the terms in an insurance contract that are consistent with the objectively reasonable expectations of the average insured." Meier v. N.J. Life Ins. Co., 101 N.J. 597, 612 (1986); see also Di Orio v. N.J. Mfrs. Ins. Co., 79 N.J. 257, 269-70 (1979). Consistent with these principles, courts should construe exclusions narrowly and "may vindicate the insured's reasonable expectations over the policy's literal meaning 'if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.'" Abboud v. Nat'l Union Fire Ins. Co., 450 N.J. Super. 400, 409 (App. Div. 2017) (quoting Zacarias v. Allstate Ins. Co., 168 N.J. 590, 601 (2001)). The party's expectation of coverage must be real and objectively reasonable. See id. at 410.

Here, the policy language is unambiguous and the "Loading and Unloading" clause is an expansion, not a limitation, on coverage.

In light of our decision that the next business day rule does not apply to extend coverage under the policy, we need not address plaintiff's argument that it was entitled to summary judgment under its "all-risk" policy, despite its "reckless and/or gross[] negligen[ce] in failing to protect and secure the subject shipment prior to its theft[.]"

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION