**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3845-19

DENNIS DEVINO, individually
and as a member of ANDIRON
RESTAURANT INVESTMENT,
LLC,

      Plaintiff-Appellant,

v.

ANNA ULASHKEVICH,
GREG ULASHKEVICH,
PAUL ULASHKEVICH, and
ULASHKEVICH PROPERTIES,
LLC,

      Defendants-Respondents.

_____

Submitted October 12, 2021 – Decided December 8, 2021

Before Judges Fasciale and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2054-19.

Louis E. Granata, attorney for appellant.

Parsons & Nardelli, attorneys for respondents (James M. Nardelli, on the brief).

PER CURIAM

Plaintiff Dennis Devino, individually and as a member of Andiron Restaurant Investment, LLC, appeals from a December 20, 2019 order granting defendants Anna Ulashkevich, Greg Ulashkevich, Paul Ulashkevich, and Ulashkevich Properties, LLC, summary judgment dismissing plaintiff's complaint. Based on our review of the record, we conclude there are no genuine issues of material fact and the court correctly determined defendants are entitled to judgment as a matter of law on the singular cause of action—unjust enrichment—asserted in the complaint. We therefore affirm.

I.

Based on our review of the pleadings, the parties' Rule 4:46-2 statements, plaintiff's counsel's certification in opposition to the summary judgement motion, and Paul Ulashkevich's certification in support of defendants' summary judgment motion, we discern the following undisputed facts.[1]

---

[1]  In his response to defendants' statement of material facts, plaintiff admits many of the asserted facts. He does not, however, cite to the record in support of his denial of the remaining facts. See R. 4:46-2(a) to (b). As a result, we deem admitted each sufficiently supported fact proffered in defendants' Rule 4:46-2 statement. See R. 4:46-2(b).

A-3845-19

On June 10, 2019, plaintiff filed a single count complaint against defendants that was later amended on July 11, 2019, and again on July 24, 2019. The second amended complaint (complaint) alleges that in June 2010, plaintiff and "other members of Andiron Restaurant [I]nvestment, LLC" entered into a written memorandum with defendants Anna Ulashkevich and Gregory J. Ulashkevich to purchase property in Marlboro and a liquor license. The complaint alleges defendant Ulashkevich Properties LLC owned the property and liquor license, and that it had suspended operation of a restaurant and bar on the property because they needed repair.

The complaint further alleges defendants requested that "plaintiff[]"[2] make repairs to the property "[w]hile the terms of the written contract were being negotiated." Plaintiff alleges he obtained permits, prepared various plans, and incurred costs and expenses totaling $489,740.98 to make repairs to the property while the parties continued to negotiate the purchase contract's terms. According to the complaint, "the [p]arties never entered into the [purchase] contract."

---

[2] The complaint variously refers to "plaintiff" and "plaintiffs." We employ "plaintiff" because Dennis Devino is the only named plaintiff in the complaint.

The complaint also alleges defendants acknowledged the improvements plaintiff made to the property "and agreed to reimburse the total costs [for the improvements] and return the initial deposit of $34,000." Plaintiff claimed defendants subsequently negotiated over the value of the improvements and defendants agreed to reimburse plaintiff when the property was sold. Plaintiff averred the negotiations continued to July 2017.

The complaint alleges plaintiff filed a construction lien against the property for the labor and materials together with the deposit.[3] The lien was recorded on May 7, 2013. The complaint asserts a cause of action for unjust enrichment, and seeks compensatory and punitive damages, a constructive trust, and counsel fees and interest. Following completion of discovery, defendants moved for summary judgment based on a record establishing the following undisputed facts.

In May 2010, Robert Arzano presented defendants with a proposal concerning the operation of their family business, the "Andiron Inn." On June 24, 2010, a handwritten agreement was signed by Arzano, Robert Lueders and defendants. Subsequently, defendants retained counsel, as did Arzano and

---

[3] The complaint states the lien is annexed as Exhibit A, but the lien is not annexed to the complaint in the appendix on appeal. The lien, however, is included elsewhere in plaintiff's appendix.

Lueders, to "prepare a more formal agreement . . . to memorialize and implement the terms of the handwritten agreement." During the ensuing negotiations, Arzano and Lueders "insisted that 'AD Investments, LLC' be identified as the [b]uyer." The record shows Andiron Restaurant Investment, LLC, of which plaintiff is a member, was to buy the property and liquor license, and it later claimed it made improvements to the property in anticipation of its purchase.

During an August 23, 2011 meeting, defendants and Arzano and Lueders reached an agreement on contract terms, including that "AD Investments" would be the buyer of the property and liquor license. Defendants' counsel then "prepared drafts of documents to memorialize the agreement reached on August 23, 2011[,] and provided them to" plaintiff's counsel. Arzano and Lueders refused to honor the terms of the agreement reached on August 23, 2011, "and began demanding further concessions from defendants."

On February 21, 2012, defendants' counsel sent a letter to Arzano's and Lueders' counsel scheduling a "[t]ime [is] of the [e]ssence" closing for March 1, 2012. In response, plaintiff's counsel forwarded a February 27, 2012 letter to defendants' counsel stating in pertinent part that his client, Andiron Restaurant Investment, LLC, could not execute the draft contracts the parties had "been

negotiating" due to a change in the Township of Marlboro's requirements. Plaintiff's counsel further stated the "deal as . . . originally structured . . . cannot [proceed]." Most importantly, plaintiff's counsel stated that if the agreement was not restructured, his client would "have no alternative but to terminate, [and] place a lien on the real estate for $550,000 for the improvements and investments made to improve the property."

Plaintiff refused to close on March 1, 2012, and defendants' counsel provided written notice to plaintiff's counsel terminating any further negotiations over the purchase. One year later, on May 7, 2013, plaintiff's counsel filed a NOTICE FOR UNPAID BALANCE AND RIGHT TO FILE LIEN in the Monmouth County Clerk's office on behalf of plaintiff, "individually and as [m]ember of Andiron Restaurant Investment, LLC." The $523,740.98 lien notice alleged plaintiff performed work and provided equipment and services at the property commencing in "June of 2010," totaling $498,740.98, and paid defendants $34,000 "on account of an agreement to purchase the [l]iqour license." Defendants' counsel sent a May 10, 2013 letter to plaintiff's counsel noting deficiencies in the lien notice and requesting

commencement of "an action to enforce the lien claim in accordance with the provisions of N.J.S.A. 2A:44A-14(a)(2)."[4]

In August 2013, plaintiff's counsel wrote to defendant's counsel stating, "Our clients continue to negotiate and discuss options to resolve this matter." The letter also noted that a recent appraisal of the property indicated plaintiff had improved the property value by $295,000, including updating a sewage disposal system for $80,000.

On September 20, 2013, counsel for defendants sent a letter to plaintiff's counsel stating he had "reviewed the appraisal of Central State Appraisal Services, LLC," which it appears plaintiff provided to defendants. The appraisal, which is not included in the record on appeal, evidently determined the property's fair market value was $477,000. Defendants' counsel's letter addressed plaintiff's claim concerning alleged improvements made to the property, stating "nothing in the [appraisal] [indicated] that [plaintiff] had improved the property by $205,000[]." Defendants' counsel further noted

---

[4] In pertinent part, N.J.S.A. 2A:44A-14(a)(2) provides that "a claimant filing a lien claim" forfeits all rights to the lien "if the claimant fails to commence an action in the Superior Court . . . to enforce the lien . . . within [thirty] days" of receiving written notice from the property owner "requiring the claimant to commence an action to enforce the lien." Here, plaintiff did not commence an action to enforce the lien within thirty days of defendant's counsel's May 10, 2012 letter.

plaintiff's "improperly filed lien for $523,740.98 apparently exceeds the appraised value" of the property, and defendant's counsel opined "it seems impossible that [plaintiff's] efforts could have enhanced the value of the property to any appreciable degree."

Defendants hired an architectural and engineering firm to inspect the property. John Quinn, a construction manager, wrote a report in December of 2013 noting numerous problems in need of remediation for safety and code compliance. The same firm later issued a report in 2014, noting plaintiff's 2010 as-built plans for structural components of the basement deviated from the construction plans.

In a July 2014 letter, plaintiff's counsel informed defendants' counsel "[i]t ha[d] been a year since" plaintiff provided an appraisal of the property and that defendants had not responded. The letter concluded by asking, "Is it necessary that I file a complaint and we deal with each other under the [timelines] set forth in the New Jersey Rules of Court?"

Sixteen months later, in a November 2015 letter to defendants' counsel, plaintiff's counsel stated, "It has been some time since you and I became involved in the transactions our clients have attempted to resolve. It appears there is an impasse[,] and my client has received no satisfactory resolution of

8

his claims for the investment he has made to improve your client's property." In the letter, plaintiff's counsel asks, "Is there any movement on your client's part to resolve these issues?" He then states, "If not, I have been authorized to file a complaint based on unjust enrichment."

Twenty months passed. The parties evidently met in July 2017 at the office of defendants' counsel,[5] who then sent plaintiff's counsel a letter offering to hire a "third party expert who . . . would be perfect for resolution of the issues that exist between our clients." The individual's resume was provided, and defendants' counsel sought plaintiff's consent to hire him.

In a December 14, 2017 letter to defendants' counsel, plaintiff's counsel asked for an update, stating, "Since our meeting in July there has not been much progress towards resolving [plaintiff's] claim." The letter also states defendants received two separate offers, one to buy the property and the liquor licenses, and another just for the liquor license. Plaintiff's counsel continued, "If your client is accepting either offer, my client will be willing to compromise his claim; if, however, there is no agreement, I will have to proceed to enforce the claim for [u]njust [e]nrichment to the property."

---

[5] Defendants had new counsel at this time.

Fifteen months later, in a March 8, 2019 letter to defendants' counsel, plaintiff's counsel noted defendants' counsel had not responded to plaintiff's counsel's December 14, 2017 letter. Plaintiff's counsel stated, "It is now more than a year and there has been no effort on [defendants'] part to resolve this matter." The letter also stated, "I have been instructed to commence suit for the unjust enrichment to the property and to seek damages."

Plaintiff filed a complaint against defendants on March 15, 2019, asserting causes of action for breach of contract and unjust enrichment. Plaintiff claimed defendants breached a contract, and were unjustly enriched, by failing to pay plaintiff for improvements Andiron Investment, LLC made to the property prior to March 1, 2012. The alleged contract upon which the claims were based was terminated no later then March 1, 2012, and all of the claimed improvements were completed prior to that date. Since more than seven years had elapsed since the contract was terminated and the alleged improvements were completed, defendants moved to dismiss the March 15, 2019 complaint on statute of limitations grounds.

At oral argument on the motion, plaintiff's counsel asserted an additional claim that at some point after the March 1, 2012 termination of the original agreement, "defendants, from that point forward, entered into an agreement

10

with . . . plaintiff to settle and reimburse [plaintiff] for the improvements to the property." The court granted defendants' motion to dismiss the asserted claims on statute of limitations grounds pursuant to Rule 4:6-2(e) and dismissed the complaint without prejudice to plaintiff's ability to bring a separate action "based upon another agreement such as that alluded to by plaintiff's counsel at oral argument."

As noted, in June 2019, plaintiff filed his complaint in this action, and twice amended the complaint in July 2019. The singular cause of action in the second amended complaint—for unjust enrichment—is founded on allegations that following March 1, 2012, defendants acknowledged plaintiff made improvements to the property "and agreed to reimburse the total costs and return the initial deposit of $34,000"; defendants agreed to reimburse plaintiff when the property is sold; and defendant's agreed to reimburse plaintiff for his expenses.

Defendants filed an answer to the complaint, denying plaintiff's allegations. In a counterclaim, defendants asserted plaintiff's lien contained false statements; the lien was filed and maintained improperly; and plaintiff willfully and maliciously refused to discharge the lien. Defendants sought

11

compensatory and punitive damages, counsel fees, costs of suit, and pre-judgment interest.

Defendants subsequently moved for summary judgment on plaintiff's unjust enrichment claim. In support of the motion, defendants relied in part on plaintiff's deposition testimony. Defendants noted that when asked whether any defendant had ever agreed to repay the $34,000 initial deposit as alleged in the complaint, plaintiff testified, he "was not involved with any . . . of those types of agreements, whether or not they were going to reimburse any funds." When asked whether any defendant agreed to return plaintiff anything as alleged in the complaint, plaintiff testified, "No. . . . Why would they?" When asked whether any defendant agreed to reimburse him when the property was sold, plaintiff testified, "No. Other than as I mentioned, if we got into an agreement altogether."

The court heard argument on defendants' motion. Plaintiff argued the post-March 2, 2012 communications between the parties and their counsel established an agreement defendants would reimburse plaintiff for his alleged pre-March 1, 2012 improvements to the property. Defendants argued plaintiff's deposition testimony established there was no post-March 1, 2012 agreement between the parties. Defendants also argued the discovery rule did not toll the

statute of limitations on plaintiff's unjust enrichment claim because plaintiff, through his counsel, first threatened to file a lien based on the alleged sums due in February 2012, and plaintiff therefore knew he had a potential cause of action for more than six years prior to the filing of his June 2019 complaint.

The court found there was no evidence of a post-March 1, 2012 agreement to reimburse plaintiff based on plaintiff's deposition testimony there was no such agreement with defendants. The court also determined defendants' participation in discussions concerning the resolution of plaintiff's lien claim did not constitute an agreement to reimburse him. The court further found that settlement discussions do not toll the statute of limitations because "if the case does not resolve within the statute of limitations period, [a potential plaintiff must then] file the complaint." The court granted defendants' motion for summary judgment.

Plaintiff filed a motion for reconsideration, R. 4:49-2, which the court denied.[6] On May 22, 2020, the court granted defendants' motion to dismiss its counterclaim without prejudice. Plaintiff's appeal from the summary judgment order followed.

---

[6] Plaintiff does not appeal from the denial of his motion for reconsideration.

## II.

"We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court." Abboud v. Nat'l Union Fire Ins. Co., 450 N.J. Super. 400, 406 (App. Div. 2017). This standard mandates the grant of summary judgment "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

Plaintiff offers three arguments in support of his appeal. He contends his unjust enrichment claim was timely filed by virtue of the discovery rule. See generally Lopez v. Sawyer, 62 N.J. 267, 272-75 (1973) (explaining the discovery rule). Plaintiff also argues the parties' post-March 1, 2012 communications concerning the possible resolution of his lien claim tolled the statute of limitations such that the filing of his June 2019 complaint was within the six-year limitations period. Last, he contends the parties had an agreement implied-in-law to reimburse him for the improvements to the property. We are not persuaded.

Unjust enrichment is "quasi-contract doctrine" requiring a party to "demonstrate that the opposing party 'received a benefit and that retention of

14

that benefit without payment would be unjust.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 288 (2016) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 110 (2007)). A six-year statute of limitations applies to plaintiff's unjust enrichment claim. N.J.S.A. 2A:14-1; see Miller v. Bd. of Chosen Freeholders of Hudson Cnty., 10 N.J. 398, 409 (1952) (explaining six-year statute of limitations applies to actions to recover value of services rendered); Kopin v. Orange Prods., Inc., 297 N.J. Super. 353, 373-74 (App. Div. 1997) (finding N.J.S.A. 2A:14-1's six-year limitations period applicable to quasi-contract claims, including unjust enrichment claims); see also Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 473 (D.N.J. 1999) (same).

Generally, "[f]or purposes of determining when a cause of action accrues so that the applicable period of limitation commences to run, the relevant question is when did the party seeking to bring the action have an enforceable right." Metromedia Co. v. Hartz Mountain, Assocs., 139 N.J. 532, 535 (1995) (alteration in original) (quoting Andreaggi v. Relis, 171 N.J. Super. 203, 235-36 (Ch. Div.1979)). The discovery rule, which was adopted by our Supreme Court in Fernandi v. Strully, 35 N.J. 434, 450 (1961), delays accrual of a cause of action "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a

basis for an actionable claim." R.L. v. Voytac, 199 N.J. 285, 299 (2009) (quoting Lopez, 62 N.J. at 272).

"[I]n determining [if] it is appropriate to apply the discovery rule[,] [t]he crucial inquiry is 'whether the facts presented would alert a reasonable person exercising ordinary diligence that he or she was injured due to the fault of another.'" Szczuvelek v. Harborside Healthcare Woods Edge, 182 N.J. 275, 281 (2005) (quoting Martinez v. Cooper Hosp., 163 N.J. 45, 52 (2000)); accord Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001). The standard for determining the application of the discovery rule is "basically an objective one— whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running.'" Szczuvelek, 182 N.J. at 281 (quoting Martinez, 163 N.J. at 52). It is not necessary that a plaintiff has a provable claim or be aware of facts to suggest that fault is "probable," rather all that is required is that he or she be aware of facts suggesting the "possibility" of wrongdoing. Savage v. Old Bridge-Sayreville Med. Grp., P.A., 134 N.J. 241, 248 (1993).

Here, there is no issue here about when plaintiff knew or should have known about his unjust enrichment claim for the alleged improvements made to the property and investment in the property. See Szczuvelek, 182 N.J. at 281. The undisputed facts establish plaintiff had actual knowledge of the grounds

supporting his unjust enrichment claim no later than March 1, 2012. On February 27, 2012, plaintiff's counsel wrote to defendants' counsel and declared plaintiff's intention to file a lien on defendants' property for the improvements made to, and plaintiff's investments in, the property if the agreement to purchase the property was not restructured. Two days later, on March 1, 2012, defendants rejected plaintiff's request for restructuring, and terminated the purchase agreement.

Thus, on March 1, 2012, plaintiff knew defendants terminated any putative agreement to reimburse him for the deposit and the value of the alleged improvements. Moreover, in May 2013, plaintiff again demonstrated actual knowledge of his claim. He filed a notice of a $523,740.98 lien on defendant's property based on the identical claim his counsel asserted fourteenth months earlier in his February 27, 2012 letter.

A "plaintiff seeking application of the discovery rule" must "establish that a reasonable person in her [or his] circumstances would not have been aware within the prescribed statutory period that he or she was injured through the fault of another." Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 194 (2012). The undisputed facts do not permit such a showing here. Rather, the evidence shows plaintiff had actual knowledge of his unjust enrichment claim no later than on

March 1, 2012. Where "a plaintiff knows . . . that he has a cause of action against . . . identifiable defendant[s] and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action." Caravaggio, 166 N.J. at 245 (quoting Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 115 (1973)). Here, the discovery rule provides no refuge for plaintiff from the six-year limitations period in N.J.S.A. 2A:14-1 that bars his cause of action; the undisputed facts establish he had actual knowledge of the claim more than six years prior to the filing of his complaint.

Plaintiff also contends the parties' post-March 1, 2012 communications concerning a possible resolution of his claim equitably tolled the statute of limitations and, therefore, his complaint is timely. We discern no basis in the evidence to support application of the doctrine of equitable tolling here.

"[T]he doctrine of equitable tolling of limitations periods [is] applied only in narrowly-defined circumstances," R.A.C. v. P.J.S., Jr., 192 N.J. 81, 100 (2007), when "tolling of the statute of limitations is the fair and responsible result," Price v. N.J. Mfrs. Ins. Co., 182 N.J. 519, 525 (2005). Equitable tolling "may be available 'when a plaintiff is misled . . . and as a result fails to act within

the prescribed time limit.'"  Bustamante v. Borough of Paramus, 413 N.J. Super. 276, 299 (App. Div. 2010) (alteration in original) (quoting Villalobos v. Fava, 342 N.J. Super. 38, 50 (App. Div. 2001)).  Further,

> [e]quitable tolling has generally been applied in three circumstances:
>
> (1) [where] 'the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass' . . .
>
> (2) where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights [and] . . .
>
> (3) where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.
>
> [Binder v. Price Waterhouse & Co., L.L.P., 393 N.J. Super. 304, 312 (App. Div. 2007) (second, third, fourth, and fifth alterations in original) (quoting Freeman v. State, 347 N.J. Super. 11, 31 (App. Div.), certif. denied, 172 N.J. 178 (2002))].

"[A]bsent a showing of intentional inducement or trickery by a defendant, the doctrine . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice."  Freeman, 347 N.J. Super. at 31.  We have explained that

> the threshold factual predicate for plaintiff's equitable tolling claim is a finding that defendant's misconduct contributed to expiration of the applicable limitations period.  Absent this finding, there would be no basis for

19

> equitable tolling. A plaintiff who seeks to invoke equitable tolling bears the burden of establishing this factual foundation.
>
> [Bernoskie v. Zarinsky, 383 N.J. Super. 127, 136 (App. Div. 2006) (internal citations omitted)].

The record is simply devoid of any evidence defendants intentionally induced plaintiff to delay the filing of his complaint until after the limitations period expired or that defendants engaged in any trickery. Scattered and inconsistent discussions about a possible resolution of plaintiff's claim are not enough to invoke the doctrine. See, e.g., Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 172 (App, Div. 2007) (rejecting application of the doctrine of equitable tolling where the plaintiff failed to present "evidence that [the] defendants lulled [the plaintiff] into missing the filing deadline by concealing the seriousness of defects in the construction or by promising to repair all of the defects without the need for litigation").

Plaintiff also did not produce any evidence he was induced by any alleged action by defendants to delay the filing of his complaint beyond the six-year limitations period. Plaintiff did not offer a certification or affidavit explaining the reason he waited until the limitations period passed before filing his complaint in June 2019. Thus, the record provides no evidence upon which it

A-3845-19

could be properly concluded the doctrine of equitable tolling should be applied to render plaintiff's complaint—filed more than seven years after his claim accrued—timely under N.J.S.A. 2A:14-1.

Plaintiff's remaining argument, that his complaint timely asserted a cause of action for a "contract implied in law" is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We note only that to the extent plaintiff's vaguely articulated claim is founded on a purported contract implied in law to reimburse him for the alleged improvements to, and investment in, the property, it is, for the reasons we have explained, either undermined by his own deposition testimony or barred as untimely under N.J.S.A. 2A:14-1.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION